J-S52037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BURNELL WILLIAMS | |
| Appellant | No. 314 WDA 2015 |

Appeal from the Judgment of Sentence of January 8, 2015
In the Court of Common Pleas of Butler County
Criminal Division at No.: CP-10-CR-0001775-2013

BEFORE:  SHOGAN, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED NOVEMBER 20, 2015**

Burnell Williams appeals his January 8, 2015 judgment of sentence, which was entered following his convictions of theft by unlawful taking of movable property, criminal conspiracy, retail theft, and receiving stolen property.[1]  We affirm.

The evidence adduced at trial, viewed in the light most favorable to the Commonwealth as verdict-winner, supports the following account of the factual and procedural history of this case.  On January 29, 2013, Burnell Williams, Melinda Pounds, and Paul Druschel drove together in Williams' car from New Castle, Pennsylvania, to a convenience store located in Cranberry Township, Pennsylvania, for the sole purpose of shoplifting in that store.

---

[1]    18 Pa.C.S. §§ 3921(a), 903(c), 3929(a)(1), and 3925(a), respectively.

Upon arriving at the store, Williams, Pounds, and Druschel entered and began to conceal store items under their clothes. An employee at the store noticed one of the individuals attempting to shoplift and notified the store manager, Steven Knight. Before Knight could inspect the situation, Druschel exited the store with several bottles of shampoo bulging out of his jacket. Knight followed Druschel out of the store and confronted him. Druschel immediately returned the items to Knight and returned to Williams' car. Before Druschel could leave, Knight used his cellphone to take pictures of him and Williams' car. Knight then called the police to report the incident. Immediately thereafter, Druschel drove away in William's car without Pounds or Williams. Knight returned to the store.

After witnessing the confrontation between Knight and Druschel, Williams and Pounds abandoned the items in their possession and exited the store. Pounds and Williams realized that Druschel had departed without them. Officer Mike Kramer then arrived at the store. He observed Williams and Pounds walking outside of the store; however, he was unaware at that moment that Williams and Pounds were associated with the reported shoplifting incident.

At some point between Druschel's departure and Officer Kramer's arrival, Williams came into possession of Knight's car keys.[2] Williams and

_____

[2] It is unclear precisely how Williams came into possession of Knight's car keys. However, the record suggests that Knight may have dropped his
*(Footnote Continued Next Page)*

Pounds located Knight's car by using the remote attached to Knight's car keys. After locating Knight's car, Pounds and Williams stole Knight's car and left the store parking lot. Williams drove the vehicle, and Pounds sat in the front passenger seat. Upon departing the store parking lot, Williams and Pounds passed Officer Kramer in his patrol car. Officer Kramer observed the car and recognized Pounds and Williams as the individuals who he had seen earlier walking near the convenience store. Pounds and Williams drove together back to New Castle, Pennsylvania.

After finishing work several hours later, Knight left the store. Upon leaving the store, Knight realized that his car and his car keys were missing. Knight immediately called the police to report that his car had been stolen. Later that evening, New Castle police recovered Knight's car in New Castle, Pennsylvania, and the car was returned to Knight.

The following day, Detective Matthew Irvin was assigned to investigate the reported retail theft and subsequent car theft. Regarding the retail theft, Detective Irvin learned that the car that Knight witnessed Druschel driving belonged to Williams and his former girlfriend, Ashley Shirley. A few weeks later, Detective Irvin contacted Shirley and Williams. Detective Irvin interviewed Williams on February 19, 2013. During that interview, Williams

_(Footnote Continued)_ ——————————

keys onto the ground outside of the convenience store during his initial confrontation with Druschel.

acknowledged that he was involved in the retail theft with Pounds and Druschel. However, he denied stealing Knight's car.

On May 14, 2013, the police filed a criminal complaint against Williams. Williams was arrested on June 4, 2013. Williams posted bail on June 25, 2013.

On December 12, 2014, Williams filed a motion *in limine* seeking, in part, to exclude Officer Kramer's identification of him, which the trial court denied. After a one-day jury trial, Williams was convicted of theft by unlawful taking of movable property, criminal conspiracy, and receiving stolen property on December 16, 2014.[3] On January 8, 2015, the trial court sentenced Williams to two to four years' imprisonment on the criminal conspiracy count, and to two to four years' imprisonment on the theft by unlawful taking of movable property count, which the court ordered to run concurrently with the criminal conspiracy count. Williams also received a sentence of guilt with no further penalty on both the receiving stolen property count and the retail theft count. Williams was ordered to pay $972.89 to Knight in restitution. On January 9, 2015, Williams filed a post-sentence motion, which was denied by the trial court on January 23, 2015.

_____

[3]  Separate from the jury's verdict, but during the same proceeding, the trial court, from the bench, found Williams guilty of retail theft, 18 Pa.C.S. § 3929(a)(1), a summary offense.

On February 3, 2015, Williams simultaneously filed a notice of appeal and application for leave to appeal *in forma pauperis*. On February 9, 2015, the trial court granted Williams' request to proceed *in forma paupris* and directed him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Williams timely filed his concise statement on February 23, 2015. On March 2, 2015, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Williams raises two issues for our review:

I.      Whether the weight and sufficiency of the evidence presented by the Commonwealth is enough to sustain the guilty verdict rendered for the offense of criminal conspiracy, theft by unlawful taking[,] and receiving stolen property?

II.     Whether the trial court abused its discretion, or erred as a matter of law, by denying [Williams'] motion *in limine* to exclude the testimony of Officer Kramer?

Brief for Williams at 9 (capitalization omitted; italics added).

In his first issue, Williams generally challenges the weight and the sufficiency of the evidence developed by the Commonwealth to convict him of criminal conspiracy, theft by unlawful taking, and receiving stolen property. Williams does not raise any challenge regarding his conviction of retail theft. Although Williams combines his weight and sufficiency challenges into a single issue, he addresses those issues separately within his brief. Accordingly, we will review Williams' sufficiency challenges first.

When examining a challenge to the sufficiency of evidence:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa. Super. 2005)).

In order for the jury to convict Williams of theft by unlawful taking of movable property, the Commonwealth must establish that Williams had "unlawfully take[n], or exercise[d] unlawful control over, movable property of another with the intent to deprive him thereof." 18 Pa.C.S. § 3921(a). Movable property is defined as "[p]roperty the location of which can be changed." 18 Pa.C.S. § 3901. Property of another is defined as "property in which any person other than the actor has an interest which the actor is not privileged to infringe." *Id.* Deprive is defined as "dispos[ing] of the property so as to make it unlikely that the owner will recover it." *Id.*

In response to the retail theft complaint, Officer Kramer arrived at the convenient store and observed Williams and Pounds walking outside of the store. Notes of Testimony ("N.T."), 12/16/2014, at 62-63. Shortly thereafter, while driving in his patrol car, Officer Kramer observed Williams and Pounds traveling in a green Dodge Intrepid on a road near the convenience store. *Id.* at 65. Officer Kramer searched the license plate number of the vehicle, because he recognized Pounds as the individual who was walking in front of the convenience store fifteen minutes earlier. *Id.* As a result of Officer Kramer's search, he learned that the vehicle was registered to Steven Knight. *Id.* at 66. Knight's car, at that moment, was not reported as stolen. *Id.*

Williams points out that Knight "was not able to determine at what time or location in which he lost control over his vehicle keys." Brief for Williams at 17. To the extent that Williams argues that he was not in possession of Knight's car keys, we note that circumstantial evidence is sufficient to prove any element or all of the elements of unlawful taking of movable property. *Commonwealth v. Quel*, 27 A.3d 1033, 1041-42 (Pa. Super. 2011).

In the present matter, Pounds testified that, after leaving the store, she realized that Druschel had driven away in Williams' car leaving her and Williams behind. N.T. at 46. Immediately thereafter, Pounds witnessed Williams pull a set of car keys from his pocket, which he then used to operate Knight's car and drive himself and Pounds back to New Castle,

Pennsylvania. *Id.* Furthermore, Knight testified that he did not give anyone permission to drive his car that day. *Id.* at 33. Detective Irvin also testified that Knight's car was recovered by police only a few blocks from Williams' residence in New Castle. *Id.* at 96-99. Viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of unlawful taking of movable property beyond a reasonable doubt.

Williams next challenges the sufficiency of the evidence developed by the Commonwealth to convict him of receiving stolen property. Brief for Williams at 16. In order for the jury to convict Williams of receiving stolen property, the Commonwealth must establish that Williams "intentionally receiv[ed], retain[ed], or dispos[ed] of movable property of another knowing that it has been stolen, or believing that it has been probably stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a). Receiving is defined as "acquiring possession, control or title, or lending on the security of property." 18 Pa.C.S. § 3925(b).

Williams' argument hinges upon his contention that Officer Kramer's identification of him as the driver of Knight's car was unreliable, and that "[t]he testimony of [Pounds] is completely unreliable and self-serving." Brief for Williams at 16. However, in reviewing the sufficiency of the evidence, we may not weigh the evidence and substitute our judgment for the fact-finder. *Commonwealth v. Yong*, 120 A.3d 299, 311 (Pa. Super.

2015). A challenge to the indefiniteness or uncertainty of certain identification testimony goes to its weight and is not relevant to our review of sufficiency of the evidence claims. *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011). Williams does not make any other specific argument relating to the sufficiency of the evidence regarding receiving stolen property. Hence, this claim necessarily fails.

Williams also challenges the sufficiency of the evidence developed by the Commonwealth to convict him of criminal conspiracy. *Id.* In order to convict Williams of criminal conspiracy, the Commonwealth must have established that Williams entered into an agreement to commit or aid in an unlawful act with another person; that he and that person acted with a shared criminal intent; and that an overt act was taken in furtherance of the conspiracy. 18 Pa.C.S. § 903. Further, "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S. § 903(c).

In most cases of conspiracy, it is difficult to prove an explicit or formal agreement or agreements; hence, the agreement is generally established via circumstantial evidence, such as by the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators. *Commonwealth v. Sanchez*, 82 A.3d 943, 973 (Pa. 2013). However, Pounds testified that she, Williams, and Druschel planned to drive to the store together and steal from that store. N.T. at 43. Additionally, during his interview with Detective

Irvin, Williams confessed that he traveled to the convenience store with Druschel and Pounds in order to shoplift. N.T. at 91. This evidence demonstrated that the participants shared the same criminal intent, and that they acted upon that intent. Entering the store together, and commencing to conceal unpaid-for items suffice as overt acts. Consequently, there was ample evidence of a criminal conspiracy.

Moreover, after realizing that Druschel had departed in Williams' car without her and Williams, Pounds testified, "[t]hat's when [Williams] pulled the keys from his pocket and beeped for the car. Once we found the car we got in and we left." *Id.* at 46. To the extent that Williams now argues that there was no specific agreement to steal Knight's car, a conspiracy can germinate instantaneously based upon changing circumstances. The car that Pounds and Williams departed in was not the car in which they arrived. Further, Pounds' testimony is evidence of an explicit agreement between her and Williams to steal Knight's car. Accordingly, there is sufficient evidence to support a finding of criminal conspiracy with multiple criminal objectives when Williams and Pounds agreed to leave the store together in Knight's car.

Williams next claims that the jury's verdict was against the weight of the evidence.[4] Brief for Williams at 18-20. As previously discussed, Williams did not raise any weight challenge regarding his retail theft

---

[4] Pursuant to Pa.R.Crim.P. 607(A)(3), Williams preserved his weight challenge in his post-sentence motion.

conviction. Accordingly, we review the weight of the evidence only as to Williams' convictions for criminal conspiracy, theft by unlawful taking, and receiving stolen property.

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Dupre***, 866 A.2d 1089, 1101 (Pa. Super. 2005), (citing ***Commonwealth v. Sullivan***, 820 A.2d 795, 805–806 (Pa. Super. 2003) (quoting ***Commonwealth v. Widmer***, 744 A.2d 745, 751–752 (Pa. 2000))). The Pennsylvania Supreme Court has explained that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Widmer***, 744 A.2d at 753 (citation omitted). To grant a new trial on the basis that the verdict is against the weight of the evidence, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" ***Sullivan***, 820 A.2d at 806 (quoting ***Commonwealth v. La***, 640 A.2d 1336, 1351 (Pa. Super. 1994)).

> [This Court shall not undertake to reassess credibility of witnesses, as] it is well settled that we cannot substitute our judgment for that of the trier of fact. ***Commonwealth v. Holley***, 945 A.2d 241, 246 (Pa. Super. 2008). Further, the finder of fact was free to believe the Commonwealth's witnesses and to disbelieve the witness for the Appellant. ***See Commonwealth v. Griscavage***, 517 A.2d 1256 (Pa. 1986) (the finder of fact is free to believe all, none, or part of the testimony presented at trial).

*Commonwealth v. Bozic*, 997 A.2d 1211, 1223-24 (Pa. Super. 2010) (citing *Commonwealth v. Manley*, 985 A.2d 256, 262 (Pa. Super. 2009)) (citations modified).

To support his weight of the evidence claim, Williams essentially reiterates his sufficiency argument and contends that the "Commonwealth's witnesses presented testimony that was unreliable, tenuous[,] and vague." Brief for Williams at 18. Although some inconsistencies existed in the testimony produced at trial, the jury was free to believe, or not to believe, all, none, or part of that testimony. Having reviewed the entire record, we conclude that the record supports the jury's verdict, and we discern no basis upon which to conclude that the trial court abused its discretion by concluding that the jury's verdict failed to shock that court's conscience.

In his final issue, Williams argues that the trial court erred by denying his motion *in limine* to exclude Officer Kramer's testimony. *Id.* at 20-21. Specifically, Williams argues that the "identification made by Officer Kramer was inherently unreliable," and that "[Officer Kramer] gave an extremely vague description of the driver at the time of the incident." *Id.*

A motion *in limine* gives the trial judge an opportunity to weigh potentially prejudicial and harmful evidence outside the presence of the jury. *Commonwealth v. Reese*, 31 A.3d 708, 715 (Pa. Super. 2011). A motion *in limine* is a procedure for obtaining a ruling upon the admissibility of evidence, which is similar to a ruling on a motion to suppress evidence.

*Commonwealth v. Valcarel*, 94 A.3d 397, 398 (Pa. Super. 2014). Thus, our review is the same as that of a motion to suppress, which is for an abuse of discretion. *Id.*

Initially, the Commonwealth in its brief contends that Williams' motion *in limine* actually was a motion to suppress evidence, and, thus, the motion should have been raised in an omnibus pretrial motion. Brief for Commonwealth at 11. As a result, the Commonwealth argues that Williams waived his right pursuant to Pa.R.Crim.P 581 to seek to preclude Officer Kramer's testimony. *See* Pa.R.Crim.P. 581(b) (deeming that a defendant's motions to suppress evidence will be waived when the defendant had the opportunity but failed to raise that motion to suppress such evidence at the omnibus pretrial hearing).

A motion *in limine* differs from a suppression motion in that a suppression motion is designed to preclude evidence that was obtained in violation of the defendant's constitutional rights, while a motion *in limine* intends to preclude evidence that was constitutionally obtained but which is prejudicial to the moving party. *Commonwealth v. King*, 689 A.2d 918, 921 (Pa. Super. 1997). Here, Williams' motion pertains to the reliability of Officer Kramer's identification of him and in no way argues that Officer Kramer's identification was formed in violation of Williams' constitutional rights. In fact, Williams' counsel, Attorney Joseph Smith, Esq., stated, "I filed that motion because I was looking at the probative values and the

weight respectively of the evidence at this time that the jury may hear."
N.T. at 2.  Accordingly, Williams' did not waive his right to file a motion in *limine* to preclude Officer Kramer's testimony, and we will review the trial court's denial of that motion for an abuse of discretion.

At trial, Officer Kramer testified that, after being dispatched to the convenience store regarding a retail theft complaint, he witnessed Pounds and Williams walking outside of the store.  However, he was unaware at the time that they were involved in the retail theft.  ***Id.*** at 63.  Officer Kramer further testified that, nearly fifteen minutes later, he observed Williams and Pounds driving in a green Dodge Intrepid on a road in front of the store, which led him to run a search of the license plate number of that car.  ***Id.*** at 65-67.  Officer Kramer's search revealed that the car belonged to Knight, but Knight's car was not reported as stolen at that moment.  ***Id.***  Officer Kramer identified Williams as the driver of that vehicle, and, at trial, he provided the following relevant testimony:

> Q: Now, you just said that the female matched [] who you believed you saw in the lot.  What about the driver, did you get to see the driver?
>
> A: I did as I passed the vehicle and I was in the right lane I passed the vehicle.  They're still in the left lane.  The female in the passenger seat turned away from me.
>
> Q: Okay.
>
> A: As I passed the vehicle, I looked in my rearview mirror.  I could see in the front windshield of the Intrepid, and I could, observed [*sic*] the defendant was the driver of the vehicle.

***Id.*** Officer Kramer eventually made a positive photo identification of Williams to Detective Irvin. ***Id.*** at 74.

Williams argues that "[Officer Kramer's] questionable identification was inappropriate as it serve[d] no purpose other than to bolster the account of a biased witness, [Pounds], and lead the jury to conclude that [Pounds] was honest." Brief for Williams at 22. Further, Williams argues that Officer Kramer improperly bolstered Pounds' testimony by "vouching for the accuracy of [Pounds'] statements." ***Id.*** After a thorough reading of the record, specifically Officer Kramer's testimony at trial, we detect no indication that Officer Kramer improperly vouched or bolstered the veracity of Pounds' statements.

Williams also claims Officer Kramer's identification is unreliable because Detective Irvin only presented Officer Kramer with a single photo before Officer Kramer positively identified Williams. ***Id.*** at 21. Williams' claim factually is incorrect, because Officer Kramer testified that Williams' photo was not the only photo presented to him by Detective Irvin before he made a positive identification. N.T. at 77.

Regarding the reliability of a particular identification, the court should consider:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [his] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The opportunity of the witness to view the actor at the time of the crime is the key factor in the totality of the circumstances analysis.

***Commonwealth v. Bruce***, 717 A.2d 1033, 1037 (Pa. Super. 1998) (citations omitted).  Here, Officer Kramer observed Williams driving Knight's car only ten or fifteen feet away from where he was driving in his patrol car. N.T. at 65.  Further, he witnessed Williams driving Knight's car only fifteen minutes after he observed him walking in front of the convenience store. ***Id.***

The trial court concluded that there was no legal basis to exclude Officer Kramer's testimony.  We agree.  To the extent that Williams argues that Officer Kramer's above-stated testimony was unreliable, Williams had the opportunity to cross-examine Officer Kramer at trial, and the jury was free to believe all, none, or part of that testimony.  Accordingly, the trial court did not abuse its discretion by denying Williams' motion in *limine* prior to trial.

Judgment of sentence affirmed.

Judge Shogan joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/20/2015

- 16 -