J-S49001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                        :           PENNSYLVANIA
                        :
            v.                 :
                        :
                        :
DUSTIN RAYMOND ANDREJCO-    :
JONES,                         :
                        :    No. 81 WDA 2016
             Appellant

Appeal from the Judgment of Sentence July 29, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003120-2014,
CP-02-CR-0003124-2014

BEFORE:   DUBOW, J., SOLANO, J., and FITZGERALD J.[*]

MEMORANDUM BY DUBOW, J.:          **FILED OCTOBER 06, 2017**

Appellant, Dustin Raymond Andrejco-Jones, appeals from the July 29, 2015 Judgment of Sentence entered in the Allegheny County Court of Common Pleas after a jury convicted him of charges stemming from three separate robberies committed over a nine-hour period. Appellant challenges the trial court's denial of his Motion to Sever, the denial of his Motion to Suppress all three victims' pre-trial identifications, and the weight of the evidence identifying him as the culprit in two of the robberies. After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

The relevant factual and procedural history, as gleaned from the certified record, is as follows.

Between the hours of 6:30 pm on January 8, 2014, and 3:15 am on January 9, 2014, Appellant followed three patrons of the Rivers Casino ("Casino") as they were leaving the Casino property. He robbed the three patrons in the parking garage of the Casino or after following them home from the Casino. Surveillance footage from the Casino captured Appellant's and his victims' movements.

Appellant accosted his first victim, Ronald Eritano ("Eritano"), at 6:33 pm on the fourth floor of the Casino's parking garage. Appellant physically attacked Eritano and threatened to shoot him. Although Eritano did not see a gun, he did see a steel bar in Appellant's hand. Appellant fled without taking any money when Eritano's wife began screaming for help. Security cameras did not capture the actual robbery, but video surveillance tapes show Appellant exiting his vehicle with the motor still running, walking towards Eritano, and running back to his vehicle less than a minute later and fleeing the Casino property at 6:34 pm. Eritano identified Appellant at his preliminary hearing, and again at trial. N.T., 4/29/15-5/7/15, at 32, 176.[1]

Not long after Appellant robbed Eritano and fled the Casino, security cameras captured Appellant returning in the same vehicle, later determined

---

[1] The transcripts of Appellant's Suppression Hearing and Jury Trial are contained in a single document that spans multiple days of testimony.

to be registered to his father, at 8:25 pm.[2]  At 1:00 am, security cameras captured a second victim, Thomas Gnipp ("Gnipp"), leaving the same parking garage.  Appellant, in his vehicle, followed directly behind Gnipp as he left the Casino and drove towards his home.  On his way home, Gnipp noticed that he was being followed.  Approximately twenty minutes later, as Gnipp pulled into his garage, Appellant approached Gnipp and said "Give me all of your money.  I have gun."  N.T. at 263-64.  Gnipp gave Appellant approximately $35.00.  When Appellant demanded more money, Gnipp sounded the horn of his car, causing Appellant to flee in his car.  Like Eritano, Gnipp identified Appellant at his preliminary hearing, and again at trial.  N.T. at 92-93, 265-66.

After fleeing Gnipp's home, Appellant again returned to the Casino in the same vehicle at 1:38 am.  Appellant gambled for approximately twenty minutes before returning to his vehicle and spending nearly an hour waiting in his vehicle in the Casino's parking garage.  At 2:35 am Appellant followed his third victim, Kaa Fat Liang ("Liang"), as he left the Casino parking garage.  Liang had approximately $2,600.00 in hundred-dollar bills in his pocket when he left the Casino.  N.T. at 568.

---

[2] Appellant used the same car, a light blue 1999 Ford Crown Victoria sedan, to follow each of his victims and subsequently flee the scene of all three robberies.  The license plate number of the vehicle is visible in the surveillance footage of Appellant following his victims in the Casino parking garage.  N.T. at 294.

Liang observed Appellant following him from the Casino all the way to Liang's daughter's house. As Liang exited his vehicle and approached the front door, Appellant approached him and demanded money. When Liang denied having any money, Appellant struck Liang in the face and head with a steel bar. Appellant then took the cash from Liang's pocket and fled the scene in his car.

Liang identified Appellant in a photo array and at the preliminary hearing. N.T. at 58, 61, 333. In addition, the steel bar with Liang's blood on it was recovered during a search of Appellant's vehicle.[3]

After attacking Liang, Appellant again returned to the Casino, pulling into the Casino parking garage at 3:12 am. Throughout the rest of the morning, Appellant gambled in the Casino using the money he took from Liang. Security cameras captured him trading in cash, including twenty-five one hundred-dollar bills, in exchange for $2,665.00 in Casino chips that morning. N.T. 482.

Investigators arrested Appellant the following evening, January 10, 2014, when he returned to the Casino.

The Commonwealth charged Appellant with three counts of Robbery, one count of Burglary, and one count of Aggravated Assault.[4] Appellant filed

---

[3] Inside the vehicle, Detectives also recovered a money wrapper used by the Casino to bundle $2,000.00 in currency, as well as clothing consistent with the clothing worn by Appellant as seen on surveillance footage and as described by the victims.

an Omnibus Pretrial Motion seeking, *inter alia*, to sever the charges for the three victims and to suppress the three pre-trial identifications: Gnipp and Eritano's identifications of Appellant at the preliminary hearing and Liang's identification of Appellant in a photo array. The trial court denied all relevant portions of the Motion,[5] and Appellant elected to proceed by way of a jury trial.

On May 7, 2015, the jury found Appellant guilty of all charges. On July 29, 2015, the trial court sentenced Appellant to an aggregate term of ten and one-half to twenty-four years of incarceration, with three years of consecutive probation. Appellant filed a Post-Sentence Motion, which the trial court denied on November 18, 2015.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises four allegations of error, reordered for our ease of disposition.

> 1. Did the trial court err in denying [Appellant's] Pre-Trial Motion to Sever when the charges stemmed from separate events, and involved different victims and were three distinct criminal episodes?

---
*(Footnote Continued)* ————————————

[4] 18 Pa.C.S. §§ 3701, 3502, and 2702, respectively.

[5] Not relevant to the instant appeal, the trial court suppressed evidence seized during the course of a second search of Appellant's vehicle.

2. Did the trial court err in denying [Appellant's] Pre-Trial Motion to Suppress multiple untrustworthy out-of-court identifications by all three victims?

3. Was the verdict against the weight of the evidence for the Robbery of Ronald Eritano since the testimony regarding identification was inconsistent and the eventual identification [was] overly suggestive to the extent of fatally diminishing its credibility?

4. Was the verdict against the weight of the evidence for the Robbery of Thomas Gnipp since the testimony regarding identification was inconsistent and the eventual identification [was] overly suggestive to the extent of fatally diminishing its credibility?

Appellant's Brief at 6.

### **Motion to Sever**

In his first claim, Appellant avers that the trial court erred in denying his Motion to Sever the offenses because the charges against Appellant "were different crimes, involved separate incidents with separate victims and should have been tried separately." Appellant's Brief at 16.

Our standard of review from the denial of a Motion to Sever is well-settled:

> A motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.

*Commonwealth v. Dozzo*, 991 A.2d 898, 901 (Pa. Super. 2010).

In Pennsylvania, the joinder of informations is rule-based:

**(A) Standards**

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1). Additionally, "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

In *Commonwealth v. Grillo*, this Court adopted three factors to consider in determining whether multiple offenses constitute a single "act or transaction" under Pa.R.Crim.P. 582(A)(1)(b): "1. the temporal sequence of events; 2. the logical relationship between the acts; and 3. whether they share common issues of law and fact." 917 A.2d 343, 345 (Pa. Super. 2007).

In the instant case, the trial court found that "[t]he three robberies constituted one event, beginning and ending in the same location, with the common goal, to obtain funds to gamble." Trial Court Opinion, filed 10/28/16, at 10. Appellant disputes the trial court's finding, but fails to address any of the relevant factors adopted in *Grillo*. Appellant's Brief at 17-18. Instead, Appellant avers that the three robberies should not be considered part of a single criminal episode because they occurred in three

- 7 -

different locations and "[o]nly one case was primarily violent in nature[.]" *Id.* at 18.

Using the relevant factors discussed in *Grillo*, we discern no "manifest abuse of discretion" in the trial court's determination that the offenses charged were part of a single transaction. First, the "temporal sequence of events" was an uninterrupted spree, over the course of a single evening, in which Appellant was either committing a robbery, traveling to and from the robberies, gambling with his ill-gotten gains, or stalking his next victim. Second, there is a clear "logical relationship" between the three robberies: Appellant continued to target patrons of the Casino until he obtained enough funds to continue gambling. Once he did, his spree of robberies came to an end. Finally, the three robberies "share common issues of . . . fact[,]" namely, whether Appellant was the man seen following his victims through the Casino garage in his vehicle before approaching them in a hooded sweatshirt and demanding money from them.

Appellant's selective emphasis on the location of the final moments of each crime ignores the broader context of his conduct that night. Appellant, hidden inside his father's car, used the Casino parking garage as the hunting grounds in which he targeted his victims and began stalking his prey. Although Appellant ultimately followed two of his victims off the Casino grounds, the evidence shows a continuous course of conduct targeted towards a single aim: to obtain funds with which to gamble.

Finally, the trial court "reviewed the similarities of the three crimes and concluded that Appellant would not be prejudiced by the consolidation." Trial Court Opinion at 10. Appellant also disputes this finding, averring that the Commonwealth was improperly permitted to "buttress the stronger identification, and the DNA evidence, [from the Liang Robbery] against the two substantially weaker identification[s.]" Appellant's Brief at 21.

Appellant's argument is premised on his assertion that "allowing the joinder of other unrelated robberies caused [Appellant] to be unduly prejudiced." *Id.* The robberies were closely related, however. Moreover, although Appellant contests the relative strength of the three identifications, addressed *infra*, all three victims separately identified Appellant as the man who robbed them after leaving the Casino. Circumstantial evidence, including surveillance footage of Appellant's father's car following his victims shortly before they were robbed, linked Appellant to all three crimes. Although Pa.R.Crim.P. 583 provides that a trial court "**may**" order separate trials for related offenses, we discern no manifest abuse of discretion in the trial court's decision not to do so in the instant case.

**Motion to Suppress Identifications**

In his second issue, Appellant avers that the trial court erred in denying his Motion to Suppress three pieces of evidence identifying Appellant as the perpetrator of the instant offenses: Liang's identification of Appellant from a photo array, Eritano's identification of Appellant at the

preliminary hearing, and Gnipp's identification of Appellant at the preliminary hearing. Appellant's Brief at 22-29.

Our well-settled standard of review in an appeal from an order denying a Motion to Suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (citation omitted).

Further, although additional evidence was adduced at trial or in the preliminary hearing and cited by the parties in their Briefs, our scope of review is limited to the evidence adduced at the hearing on the Motion to Suppress. As our Supreme Court recently clarified:

> It is axiomatic that the nature of the record below controls the appellate court's scope of review. ***See In re: One Hundred or More Qualified Electors***, [] 683 A.2d 283, 287 ([Pa.] 1996). For example, when determining whether the evidence is sufficient to support a conviction, we look to the evidence admitted at trial. ***See e.g. Commonwealth v. Briggs***, [] 12 A.3d 291, 306 ([Pa.] 2011). We do not look to evidence "of record" at other stages of the proceedings, such as sentencing. Similarly, in [reviewing a suppression ruling], it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression hearing.

*In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

At a hearing on a Motion to Suppress, the Commonwealth has the burden of proving that the identification evidence "was legally obtained." *Commonwealth v. Enimpah*, 62 A.3d 1028, 1031 (Pa. Super. 2013).

> When analyzing the admission of identification evidence, a suppression court must determine whether the challenged identification has sufficient indicia of reliability. This question is examined by focusing on the totality of the circumstances surrounding the identification. In deciding the reliability of an identification, a suppression court should evaluate the opportunity of the witness to see the criminal at the time the crime occurred, the witness's degree of attention, the accuracy of any description given, the level of certainty when identification takes place, and the period between the crime and the identification.

*Commonwealth v. Sanders*, 42 A.3d 325, 330 (Pa. Super. 2012) (internal quotation marks and citations omitted).

Where, as here, a defendant avers that a pretrial identification violates his right to due process, our inquiry is focused on the likelihood of misidentification. *See Commonwealth v. Ransome*, 402 A.2d 1379, 1382 (Pa. 1979) (noting that "it is the likelihood of misidentification which violates a defendant's right to due process, and it is this which is the basis of the exclusion of evidence."). "[S]uggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion." *Commonwealth v. Bruce*, 717 A.2d 1033, 1037 (Pa. Super. 1998) (citation and quotation omitted).

In the instant case, the Commonwealth presented three witnesses at the hearing on the Motion to Suppress: Trooper Mario Schiavo, Detective Donald Pasquarelli, and Detective Frederick Wright. Neither the Commonwealth nor Appellant submitted the transcript from the preliminary hearing into evidence, although the parties elicited testimony from the officers regarding the circumstances of the identifications at issue. We address each identification in turn, viewing only the evidence adduced at the hearing on the Motion to Suppress and in the light most favorable to the Commonwealth.

### *Liang's Photo Array Identification*

In his Brief to this Court, Appellant avers that the trial court should have suppressed Liang's identification of Appellant in a pretrial photo array because (i) Liang was shown two arrays with Appellant's photo and could not identify Appellant in the first; (ii) Liang did not have an adequate opportunity to observe Appellant's face; and (iii) Liang's identification of Appellant in the second array was "unclear." Appellant's Brief at 23.

Although Liang was shown two photo arrays, each of which contained a photo of Appellant, and was only able to make an identification from the second array, the previous failure to identify a defendant positively in a photo array goes to the weight, not the admissibility, of a subsequent identification. **Commonwealth v. McIntosh**, 476 A.2d 1316, 1320 (Pa. Super. 1984). Moreover, the Commonwealth introduced evidence explaining

that Liang's initial failure to identify Appellant was because the night after the Robbery, Detective Pasquarelli initially showed Liang a photo array containing an outdated photograph of Appellant. N.T. at 58. Detective Pasquarelli then prepared a second array with a more recent photograph of Appellant, and returned to Liang's home an hour later with the second array. *Id.* at 76. Liang identified Appellant from the second array. *Id.* at 61.

As to Appellant's remaining claims, no evidence was adduced at the suppression hearing to support Appellant's assertions that it was too dark for Liang to see Appellant's face, or that Liang was preoccupied looking for a key when Appellant approached to rob him. *See* Appellant's Brief at 23 (supporting his argument with references to trial testimony, which is outside the proper scope of review). Although Liang acknowledged that it was difficult for him to see after Appellant struck him in the face with the steel bar, he explained that he was nonetheless able to recognize Appellant because both men frequented the Casino. *Id.* at 190.

Nor is there any evidence to support Appellant's vague assertions that Liang's identification "was unclear" or somehow tainted by Liang's use of a translator.[6] To the contrary, Detective Pasquarelli testified that when shown the second photo array, Liang identified Appellant as the man who robbed

---

[6] Liang, whose native language is Chinese, used his son-in-law as a translator when he spoke with investigators and utilized a court-appointed translator when testifying in the instant case. N.T. at 57.

him.  ***Id.*** at 61.  He placed his initials above Appellant's photo in the array, and signed his name in Chinese characters directly below Appellant's photo. ***Id.***

Under the totality of the circumstances, we conclude that the suppression court did not err or abuse its discretion in finding that the photo arrays shown to Liang were not unduly suggestive.[7]  Trial Court Opinion at 11.

### Eritano's Preliminary Hearing Identification

As to Eritano's testimony, Appellant avers that his identification of Appellant at the preliminary hearing was suggestive, and that the Commonwealth failed to demonstrate that the identification was reliable. Appellant's Brief at 22, 25-29.

At the preliminary hearing, Appellant caused a disruption and drew attention to himself.  N.T. at 107.  He was the only person near the bar of the court who was not a lawyer or a detective, and he was readily identifiable as a defendant, wearing a red jumpsuit that identified him as an inmate, handcuffed and in shackles.  ***Id.*** at 111.  We agree with Appellant

---

[7] In his Brief to this Court, Appellant argues, for the first time, that the trial court should have suppressed Liang's identification of Appellant at the preliminary hearing.  Appellant did not include the preliminary hearing identification in his Motion to Suppress and this claim is, therefore, waived. ***See*** Appellant's Omnibus Pretrial Motion, filed 3/9/15, at 6-7; ***Commonwealth v. Sanchez***, 82 A.3d 943, 978 (Pa. 2013) ("It is a bedrock appellate principle that issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

that the circumstances of the preliminary hearing were undoubtedly suggestive. Nevertheless, "suggestiveness alone does not warrant exclusion." *Bruce, supra* at 1037.

In addressing the surrounding indicia of reliability, Appellant's argument, in turn, mischaracterizes the testimony adduced at the preliminary hearing and presents it in the light **least** favorable to the Commonwealth.

However, the evidence from the suppression hearing, viewed in the light most favorable to the Commonwealth, indicates that Eritano told investigators that he was able to observe Appellant's face during the Robbery. *See* N.T. at 25. Shortly after the attack, he described Appellant to investigators as a "light-skinned black male" who stood about five feet six inches or five feet seven inches tall.[8] *Id.* at 27-28. This description, given before Eritano saw Appellant at the preliminary hearing, closely matches the characteristics of Appellant, who concedes that he is "light skinned [and] 5'6" tall[.]" Appellant's Brief at 28.

Based on this evidence, we discern no abuse of discretion in the trial court's determination that Eritano's identification of Appellant was admissible. We agree with the trial court that the suggestive nature of the

_____

[8] Although Appellant avers that Eritano described Appellant as "dark skinned," Appellant's Brief at 25, Trooper Schiavo repeatedly testified that Eritano described his attacker as "light." N.T. at 25, 27, 28, 29.

preliminary hearing identification goes to "the weight to be given to that identification as opposed to its admissibility." Trial Court Opinion at 10.

*Gnipp's Preliminary Hearing Identification*

Finally, Appellant avers that the trial court erred in denying his Motion to Suppress Gnipp's identification of Appellant at the preliminary hearing. As discussed **supra**, we agree with Appellant that the confrontation between Appellant and his victims at the preliminary hearing was suggestive. Moreover, as to Gnipp, the suppression hearing record is wholly devoid of any indicia of reliability supporting the identification.[9] We, thus, agree that the suppression court erred in failing to suppress Gnipp's pretrial identification. However, we conclude that the error was harmless.

"[A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless." **Commonwealth v. Chmiel**, 889 A.2d 501, 521 (Pa. 2005) (citation omitted). Harmless error may be found in one of three circumstances:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was

---

[9] What little evidence was adduced at the suppression hearing regarding Gnipp shows that Gnipp initially told investigators that it was "dim" in the garage when the assailant approached him from behind to demand money, and he did not see his assailant's face. N.T. at 106, 110. Significantly, Gnipp failed to identify Appellant prior to the suggestive confrontation at the preliminary hearing. **Id.** at 108.

so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* Specific to suggestive identification evidence, this Court has found that an improperly admitted identification is harmless error where there is additional evidence corroborating the identification, and the identifying witness was cross-examined on the suggestive nature of the identification. *See McIntosh, supra* at 1320-21.

Although the jury in the instant case heard evidence of Gnipp's identification of Appellant that occurred at the preliminary hearing, which evidence should have been suppressed, the jury also witnessed Gnipp's in-court identification of Appellant.[10] Appellant did not object to Gnipp's in-court identification at trial and did not try to preclude the testimony through a Motion in Limine.[11] Thus, the inadmissible identification was "merely cumulative" of Gnipp's in-court identification.

Moreover, Appellant, like the defendant in *McIntosh, supra*, minimized any prejudice by extensively cross-examining Gnipp on the

---

[10] At trial, Gnipp testified that there was a light on in the garage and that he got a "good look" at Appellant's face. N.T. at 263-64. He denied ever telling investigators that he had not seen his assailant's face. *Id.* at 270.

[11] Had Appellant prevailed on his Motion to Suppress the pretrial identification, this would not have automatically precluded a subsequent in-court identification. A separate test governs the admissibility of an in-court identification following the suppression of an impermissibly suggestive pretrial confrontation. *See, e.g., Commonwealth v. Townsend*, 421 A.2d 452, 454 (Pa. Super. 1980).

suggestive nature of the pretrial identification. *See* N.T. at 270-80. Appellant pointed out to the jury that (i) the initial police report states that Gnipp did not see Appellant's face, *id.* at 270-72; (ii) the robbery occurred quickly and Appellant approached Gnipp from behind, *id.* at 272-75; (iii) Gnipp told investigators that the garage where the robbery occurred was dimly lit, *id.* at 277; and (iv) Gnipp failed to identify Appellant prior to the suggestive confrontation at the preliminary hearing, *id.* at 276, 278-80.

Finally, overwhelming circumstantial evidence of Appellant's guilt rendered any prejudice insignificant. Surveillance footage from the Casino showed Appellant, in his father's light-blue four-door Crown Victoria Sedan, spot Gnipp as he exited the Casino lobby and walked to his vehicle.[12] *Id.* Footage depicts Appellant circling back past Gnipp, pulling into a spot between Gnipp and the Casino garage's exit, and then waiting there for two minutes until Gnipp drives past. *Id.* at 297, 301, 303. As soon as Gnipp drives past, Appellant pulls out and follows him out of the Casino garage. *Id.* at 301. Cameras then capture him following Gnipp through the Casino property towards the highway. *Id.* at 304. Gnipp and Appellant left the Casino property at 1:01 am. *Id.* at 305.

---

[12] Investigators identified Appellant as the driver based on images of the vehicle's plates, footage of his face, and the fact that Appellant used his Casino loyalty rewards card and government identification to make purchases inside the Casino. *Id.* at 287.

En route home, on the highway, Gnipp noticed a vehicle following him during the fifteen-minute drive to his residence. *Id.* at 260. Gnipp arrived home and pulled around to the garage at the back of his residence, where Appellant robbed him. *Id.* at 262. During the robbery, Gnipp sounded his car horn and scared Appellant away. *Id.* at 263-64.

Gnipp's next-door neighbor, Kathleen Dorben ("Dorben"), testified that she heard the car horn around 1:15 am. *Id.* at 240. She looked out the front of her residence, away from Gnipp's garage, and saw a man who appeared to be anxious moving at a fast pace. *Id.* at 250. The man was walking towards a car that had not been there when Dorben had returned home thirty minutes earlier. *Id.* at 238. The man got into the back seat of the car and lay down as if hiding. *Id.* at 240-41. A few minutes later the man got into the front seat of the car and drove away. *Id.* Dorben did not see the man's face, but described him as wearing a hooded sweatshirt similar to the clothing described by Appellant's victims. *Id.* at 242. She described the car as an older model, light blue, four-door sedan. *Id.* at 240-41. When shown a photograph of Appellant's car at trial, she identified it as the same make and model as the car she saw the night of the robbery. *Id.* at 242.

Finally, surveillance cameras captured Appellant returning to the Casino garage in his vehicle at 1:38 am. *Id.* at 305. This timeline matches the time required for Appellant to leave the Casino with Gnipp at 1:01 am,

follow Gnipp for fifteen minutes to his residence, rob him, then hide for a few minutes in his vehicle, and drive fifteen minutes back to the Casino. When Appellant returned to the Casino, he had enough cash in his possession to play table games for approximately twenty minutes before returning to the parking garage to look for his next victim.

Based on the foregoing, we conclude that the suppression court's error was harmless.

### Weight of the Evidence

Appellant's final two claims challenge the weight of the evidence identifying him as the assailant in the Robbery of Eritano and the Robbery and Burglary of Gnipp. Appellant's Brief at 30-37.

A challenge to the weight of the evidence concedes that there was sufficient evidence to sustain the verdict. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in determining whether the verdict was against the weight of the evidence. *Id.*

Since the trial court judge was present for the trial and heard the evidence presented, this Court "will give the gravest consideration" to the determinations made by the trial judge as to whether the verdict was against the weight of the evidence so that a new trial should be granted in the interest of justice. *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa.

Super. 2015). Consequently, appellate review of a weight claim solely assesses whether the trial court judge committed an abuse of discretion in determining whether the verdict was against the weight of the evidence. *Id.*

Challenges to a trial court's determination that the jury's verdict is not against the weight of the evidence is one of the least assailable reasons for granting or denying a new trial. *Id.* Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id*. (quotation marks and citation omitted).

The substance of Appellant's argument supporting his weight challenge is an assertion that the victims' identification testimony is "inconsistent" and based on "overly suggestive" circumstances. Appellant's Brief at 31-32, 33.

The trial court considered Appellant's weight claims, and concluded:

The verdict was not against the weight of the evidence. Video surveillance corroborated Eritano's in-court identification of Appellant. According to the video, Appellant and the Eritanos were the only people present on the fourth floor of the garage at [the time of the robbery.] Appellant is seen in the video backing up his vehicle to leave his parking space but then pulling forward again into his space when he sees the Eritanos. Appellant exits his vehicle, leaves his engine running, and walks over to the Eritanos. Twenty or thirty seconds later, Appellant runs back to his car and exits the Casino. In addition, Eritano stated at trial that he was one hundred percent certain that Appellant was his assailant. The metal bar Eritano described was recovered from Appellant's car. . . . This combination of evidence does not shock one's conscience to the point that a new trial must be given for right to prevail.

Lastly, Appellant alleges that the verdicts of guilty for the [R]obbery and [B]urglary of Gnipp were against the weight of

- 21 -

the evidence, again based on inconsistent and suggestive identification. [At trial,] Gnipp testified that he was unable to identify anyone from the photo array the police showed him but was able to identify Appellant at the [P]reliminary [H]earing. Gnipp stated it was easier for him to identify Appellant in person instead of from a two[-]dimensional image. Despite Appellant appearing at the [P]reliminary [H]earing in a red Allegheny County Jail jumpsuit, Gnipp explained that he was able to identify him because he saw him for the first time since the incident in the flesh. Gnipp's identification is also supported by circumstantial evidence, including the Casino video and a neighbor's testimony of hearing a car horn, looking out a window, seeing a vehicle similar to Appellant's at the crime scene and observing a man, alone, engage in suspicious behavior, specifically hiding in the back seat for several minutes before getting in the driver's seat and leaving the area. The jury's verdict does not shock one's conscience.

Trial Court Opinion at 12-13.

Having given the trial court's findings "the gravest consideration," as we must, we conclude that the trial court did not abuse its discretion when determining that the verdict was not "so tenuous, vague and uncertain" as to be against the weight of the evidence. *Talbert, supra* at 546. In doing so, we incorporate our discussion, *supra*, of the circumstantial evidence supporting the identification of Appellant as Gnipps' assailant.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/6/2017