J-S65022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ISAIAH DICKERSON :
:
Appellant : No. 79 EDA 2017

Appeal from the Judgment of Sentence October 28, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006546-2015

BEFORE: OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.: **FILED DECEMBER 28, 2017**

Isaiah Dickerson appeals from the judgment of sentence imposed
October 28, 2016, in the Delaware County Court of Common Pleas. The trial
court sentenced Dickerson to an aggregate term of 54 to 120 months'
imprisonment followed by five years' consecutive probation, after finding him
guilty of robbery, criminal conspiracy, and possessing an instrument of crime
("PIC"),[1] for a June 2015, hold-up of a Sunoco gas station convenience store.
On appeal, Dickerson challenges the sufficiency and weight of the evidence
identifying him as one of the perpetrators of the crime. For the reasons below,
we affirm.

The facts underlying Dickerson's arrest and conviction are well-known
to the parties and recounted in detail in the trial court's opinion. **See** Trial

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 907(a), and 903, respectively.

Court's Opinion, 6/6/2017, at 10-14, 23 n.35. Accordingly, we need not reiterate them herein. To summarize, on June 18, 2015, at approximately 6:15 p.m., Dickerson and a cohort, with their faces partially covered, robbed a convenience store clerk at gunpoint. The clerk recognized Dickerson as a prior patron of the store, and positively identified him from a photo array.

Dickerson was subsequently arrested, and charged with, *inter alia*, robbery, conspiracy, and PIC. At the preliminary hearing, the clerk refused to identify Dickerson as one of the robbers, although he acknowledged that he had previously identified Dickerson from a photo array. Dickerson, thereafter, filed a notice of alibi defense. On July 11, 2016, the case proceeded to a non-jury trial. At trial, the clerk positively identified Dickerson as the gun-wielding robber, and explained he had been reluctant to testify at the preliminary hearing for fear of his safety. On July 14, 2016, the trial court found Dickerson guilty of all charges.

The case proceeded to sentencing on October 28, 2016. The trial court sentenced Dickerson to a term of 54 to 120 months' imprisonment for the robbery conviction, a concurrent term of five years' probation for the conspiracy conviction, and a term of five years' probation for the PIC conviction to run consecutively to the robbery sentence, but concurrently to the conspiracy sentence. Dickerson filed timely post-sentence motions challenging the weight and sufficiency of the evidence. Following a hearing,

the court denied the motions on November 28, 2016. This timely appeal follows.[2]

On appeal, Dickerson challenges the sufficiency and weight of the evidence as it relates to his identification as one of the perpetrators of the crime. First, he argues the evidence was insufficient to establish his identity because the store clerk "did not make an identification of [him] close in time to the crime" and no corroborating evidence was found at the time of his arrest. Dickerson's Brief at 12-13. Moreover, he emphasizes the clerk had his phone number, and was aware of his identifying tattoos from their prior encounters, but never provided that information to the police. *See id.* at 13. Similarly, Dickerson also asserts the verdict was against the weight of the evidence because the clerk's identification of him was "conflicting and incredible." *Id.* at 14.

When considering a challenge to the sufficiency of the evidence, "[t]he standard we apply … is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Valentine*, 101 A.3d 801, 805 (Pa. Super. 2014) (quotation omitted), *appeal denied*, 124 A.3d 309 (Pa. 2015). Furthermore,

---

[2] On January 4, 2017, the trial court ordered Dickerson to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After requesting and receiving an extension of time, Dickerson complied with the court's directive and filed a concise statement on March 2, 2017,

with respect to a specific claim that the identification of the defendant as perpetrator is flawed, we must bear in mind the following:

> In determining whether a particular identification was reliable, the court "should consider the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [his or her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The opportunity of the witness to view the actor at the time of the crime is the key factor in the totality of the circumstances analysis." *Commonwealth v. Bruce*, 717 A.2d 1033, 1037 (Pa.Super.1998) (citations omitted).

> [E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

> *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa.Super.2011).

*Id.* at 806.

When considering a challenge to the weight of the evidence, we must bear in mind:

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014). Our review of a weight claim is well-settled:[3]

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

After our independent review of the record, the parties' briefs, and the relevant statutory and case law, we find the trial court thoroughly analyzed and properly disposed of Dickerson's claims on appeal in its June 6, 2017, opinion. *See* Trial Court Opinion, 6/6/2017, at 5-33 (finding (1) evidence was sufficient to establish Dickerson was one of the assailants because the store clerk (a) was acquainted with Dickerson as a prior customer, (b) identified

---

[3] We note Dickerson properly preserved his weight of the evidence claim in a timely filed post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3).

- 5 -

Dickerson from photo array, and (c) contacted police after he recognized Dickerson's mother's vehicle; (2) Dickerson's height and age matched clerk's description; and (3) verdict was not against the weight of the evidence because clerk's prior refusal to identify Dickerson at preliminary hearing was due to clerk's concern for his safety). Accordingly, we rest on its well-reasoned bases.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/17

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL


| COMMONWEALTH OF PENNSYLVANIA | : | NO. 6546-15 |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| ISAIAH DICKERSON | : | Superior Court No. 79 EDA 2017 |


**A. Sheldon Kovach, Esquire – Deputy District Attorney for the Commonwealth**
**Shaka M. Johnson, Esquire – Attorney for Isaiah Dickerson**


## OPINION


Kelly, J.                                                      **Date: June 6, 2017**


### I. Case History

A criminal complaint was filed on July 27, 2015, by Deputy Chief Richard Herron, Sharon Hill Police Department, charging Isaiah Dickerson (hereinafter referred to as "Defendant" or "Dickerson") with, *inter alia*, robbery (threaten immediate serious bodily injury).[1] On July 28, 2015, the magisterial district judge issued for the Defendant a resulting arrest warrant. *See* Arrest Warrant, No. CR-484-15 – Magisterial District Court 32-2-37, dated July 28, 2015.

A preliminary hearing was held on October 28, 2015, before the magisterial district court at which the prosecution sought to amend the criminal complaint to add allegations of possessing instruments of crime[2] and criminal conspiracy[3] to commit all charged offenses. After the

Commonwealth's presentation of evidence, the magisterial district judge held Defendant Dickerson for trial court purposes as to all prosecuted crimes, including the amended charges.

The Defendant was formally arraigned on November 25, 2015, at which time the Office of the Delaware County District Attorney lodged again him a criminal information averring, *inter alia*, the following: Count 1 – Robbery (Threaten Immediate Serious Bodily Injury);[4] Count 9 – Possessing Instruments of Crime;[5] and Count 11 – Criminal Conspiracy to commit Robbery (Threaten Immediate Serious Bodily Injury).[6]

On February 19, 2016, Defendant Dickerson filed a counseled Notice of Alibi Defense. *See* Alibi Defense Notice dated February 19, 2016. *See generally* Pa.R.Crim.P. 567.

The prosecution on March 21, 2016, lodged its Reciprocal Notice of Witnesses Pursuant to Pa.R.Crim.P. 567(c) In Response to Defendant's Alibi Notice. *See* Commonwealth's Reciprocal Notice dated March 21, 2016.

A non-jury trial commenced on July 11, 2016, before this court.[7] N.T. 7/11/16. *See also* Defendant's Waiver of Jury Trial. Because of witness availability concerns, the trial, without objection, was adjourned until July 13, 2016, after the testimonial appearance of one (1) Commonwealth witness, the victim, Javon Abraham. N.T. 7/11/16, pp. 13-17, 93. On July 13, 2016, the trial as then scheduled resumed and concluded. N.T. 7/13/16. Absent opposition, the court as the sole finder of fact for deliberative purposes took its trial decision under advisement and by agreement of counsel set the verdict's announcement for July 14, 2016. *See* Pa.R.Crim.P. 620, 621, and 622.

The court on July 14, 2016, announced its verdict finding the Defendant guilty of the following: Count 1 – Robbery (Threaten Immediate Serious Bodily Injury),[8] Count 9 – Possessing Instruments of Crime;[9] and Count 11 – Criminal Conspiracy to commit Robbery

2

(Threaten Immediate Serious Bodily Injury).[10] N.T. 7/14/16, pp. 4-5. *See also* Verdict. Immediately following the verdict, the prosecution orally moved, of-record, for Defendant Dickerson's bail to be revoked or in the alternative, increased. The court increased the Defendant's bail, instructed he was also subject to electronic home monitoring, assuming necessary bail funds were posted, ordered no contact with the victim, and that he was to stay away from the robbery scene, a Sunoco gas station.[11] N.T. 7/14/16, p. 6. This court as such an aid directed a presentence investigation. N.T. 7/14/16, p. 6. *See generally* Pa.R.Crim.P. 702. The court listed sentencing for September 13, 2016. N.T. 7/14/16, p. 7.

A sentencing hearing proceeded before this court on October 28, 2016.[12] N.T. 10/28/16. This court then sentenced Defendant Dickerson to the following: Count 1 (Robbery - Threaten Immediate Serious Bodily Injury)[13] – A term of fifty-four (54) through one hundred twenty (120) months incarceration at a state correctional facility; Count 11 (Criminal Conspiracy to commit Robbery - Threaten Immediate Serious Bodily injury)[14] – A five (5) year period of state probationary oversight to run consecutive to count 1 (robbery - threaten immediate serious bodily injury);[15] and Count 9 (Possessing Instruments of Crime)[16] – A term of five (5) years probationary supervision to be served consecutive to the imprisonment of the robbery count (1) and concurrent to the same period of probation per count 11 (criminal conspiracy to commit robbery - threaten immediate serious bodily injury).[17] The Defendant was afforded the applicable time served credit and deemed for both boot camp participation[18] and recidivism risk reduction incentive consideration ineligible.[19] N.T. 10/28/16, pp. 24-26. *See also* Certificate of Imposition of Judgment of Sentence.

3

On November 4, 2016, Defendant Dickerson lodged counseled, Post-Sentencing Motions Pursuant to Pennsylvania Rule of Criminal Procedure 720. *See* Post-Sentencing Motions dated November 4, 2016.

As past scheduled, a hearing relevant to the Defendant's post-sentence motions took place on November 23, 2016, before this court. *See* Hearing Notice dated November 9, 2016. N.T. 11/23/16.

This court via an order of November 28, 2016, denied the Defendant's post-sentence motions. *See* Order dated November 28, 2016.

Defendant Dickerson on December 28, 2016, filed a Notice of Appeal from this court's sentencing judgment made final by his post-sentence motions' denial. *See* Order dated November 28, 2016, and Notice of Appeal dated December 28, 2016. *See also* Superior Court No. 79 EDA 2017.

Through an order dated January 4, 2017, this court instructed the Defendant's attorney to lodge a concise statement of matters complained. *See* Order dated January 4, 2017. *See also* Pa.R.A.P. 1925(b).

Defendant Dickerson on January 25, 2017, filed a counseled Petition for Extension of Time to File Concise Statement of Errors Complained of on Appeal. *See* Petition for Extension of Time dated January 25, 2017. This court in an order of February 3, 2017, granted the defense's extension application. *See* Order dated February 3, 2017.

On March 2, 2017, the Defendant lodged his counseled, appellate complaints statement asserting the error assignments discussed below. *See* Statement of Matters Complained dated March 2, 2017.[20]

## *II. Discussion*

### *A. Sufficiency of the Evidence*

Defendant Dickerson through three (3) of his complaints on appeal[21] maintains that each of his convictions do not rest on legally sound evidence. *See* Statement of Matters Complained, No. 2(b)(c)(d).

"In order to preserve a challenge to the sufficiency of the evidence on appeal, the appellant's Rule 1925(b) statement must state with specificity the element or elements of the crime upon which the appellant alleges the evidence was insufficient. *Commonwealth v. Garland,* 63 A.3d 339, 344 (Pa.Super. 2013); *Commonwealth v. Gibbs,* 981 A.2d 274, 281 (Pa.Super. 2009). 'Such specificity is of particular importance in cases, where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.' *Garland,* 63 A.3d at 344 (quoting *Gibbs,* 981 A.2d at 281)." *Commonwealth v. Veon,* 109 A.3d 754, 775 (Pa.Super. 2015), *reversed on other grounds,* 150 A.3d 435 (Pa. 2016). *See also Commonwealth v. McCree,* 857 A.2d 188, 192 (Pa.Super. 2004) *citing Commonwealth v. Lemon,* 804 A.2d 34, 37 (Pa.Super. 2002); and *Commonwealth v. Seibert,* 799 A.2d 54, 62 (Pa.Super. 2002).

The Defendant via his appellate complaints statement claiming as a matter of law his convictions cannot be sustained certainly on its face complies with the letter of this appeals court directive that sufficiency challenges for appellate review must be averred with such specificity. *See* Statement of Matters Complained, No. 2(b)(c)(d). However, such error assignments when viewed in the context of the trial are seen to be either just various restatements of the defense's contention the evidence was insufficient legally to prove Defendant Dickerson was in fact the armed robber or are contrary to the spirit underlying the mandate of alleging with particularity

5

the targeted crimes' supposedly lacking elements(s), because once as a matter of law his identification is established, any arguments that the other requisite proofs of his convictions are legally deficient on the instant record are just frivolous.[22] The thrust of this court's below discussion will thus focus on the legal sufficiency of the trial evidence salient to the Defendant's identification with summary commentary about the self-evident nature of his convictions' additional, necessary elements being as a matter of law proven.

In evaluating any type of sufficiency claim, the court must accept the evidence in the light most favorable to the Commonwealth and also drawing all rational evidentiary inferences such supports determine whether a reasonable jury could have found that each element of the crime(s) charged was established beyond a reasonable doubt. *Commonwealth v. Patterson*, 940 A.2d 493, 500 (Pa.Super. 2007) and *Commonwealth v. Rosario*, 438 Pa.Super. 241, 260-61, 652 A.2d 354, 364 (1994) *citing Commonwealth v. Calderini*, 416 Pa.Super. 258, 260-61, 611 A.2d 206, 207 (1992) *citing Commonwealth v. Jackson*, 506 Pa. 469, 472-73, 485 A.2d 1102, 1103 (1984). A court reviewing a sufficiency challenge " ... may not weigh the evidence and substitute [its] judgment for the fact-finder." *Commonwealth v. Orr*, 38 A.3d 868, 872 (Pa.Super. 2011) *citing Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011) *quoting Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) *quoting Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003) *quoting Commonwealth v. Gooding*, 818 A.2d 546, 549 (Pa.Super. 2003), *appeal denied*, 575 Pa. 691, 835 A.2d 709 (2003).

The evidence at trial need not " ' ... preclude every possibility of innocence, and the fact finder is free to resolve any doubts regarding a defendant's guilt.' " *Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra 818*

6

*A.2d at* 549, *appeal denied,* 575 Pa. 691, 835 A.2d 709. Although a conviction must be based on " ... more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Davis,* 861 A.2d 310, 323 (Pa.Super. 2004) *citing Commonwealth v. Coon,* 695 A.2d 794, 797 (Pa.Super. 1997). " ... [I]f the record contains support for the convictions, they may not be disturbed." *Id.* 861 A.2d at 323-24 *citing Commonwealth v. Marks,* 704 A.2d 1095, 1098 (Pa.Super. 1997) *citing Commonwealth v. Mudrick,* 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986).

These long-settled principles of law governing a sufficiency claim are equally applicable to cases where the evidence is circumstantial rather than direct, provided that the combination of inferential evidence links the accused to the criminality and/or establishes the crime's requisite element(s) beyond a reasonable doubt. *Commonwealth v. Kriegler,* 127 A.3d 840, 847 (Pa.Super. 2015) *quoting Commonwealth v. Hartie,* 894 A.2d 800, 803-04 (Pa.Super. 2006) *quoting Commonwealth v. Thomas,* 867 A.2d 594, 597 (Pa.Super. 2005). *See also Commonwealth v. Cox,* 546 Pa. 515, 528, 686 A.2d 1279, 1285 (1996).

In deciding whether as a matter of law the trial evidence was sufficient to sustain a conviction, it must be remembered " '[w]hen evaluating the credibility and weight of the evidence, the fact finder is free to believe all, part or none of the evidence.' " *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler,* 903 A.2d 1273, 1276-77 (Pa.Super. 2006). *See also Commonwealth v. Hansley supra* 24 A.3d at 416. Furthermore, the finder of fact is tasked with being the " ... sole judge[ ] of the credibility and weight of all testimony," and is certainly free to reject or accept, in whole or part, the testimony of any witness. Pa. SSJI (Crim) 2.04. Regarding the offered testimony and other trial evidence, the fact finders in making such decisions may choose what they value and discount what they find

7

unpersuasive. "This standard of deference is not altered in cases involving a bench trial, because 'the province of a trial judge sitting without a jury is to do what a jury is required to do.' " *Commonwealth v. Lee*, 956 A.2d 1024, 1027 (Pa.Super. 2000) *quoting Commonwealth v. Lambert*, 765 A.2d 306, 362 (Pa.Super. 2000).

Relevant to the legal sufficiency of a defendant's identification, the Superior Court has past held the following:

> In determining whether a particular identification was reliable, the court 'should consider the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [his or her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The opportunity of the witness to view the actor at the time of the crime is the key factor in the totality of the circumstances analysis. ...
>
> '[E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.'

*Commonwealth v. Valentine*, 101 A.3d 801, 806 (Pa.Super. 2014) *quoting Commonwealth v. Bruce*, 717 A.2d 1033, 1037 (Pa.Super. 1998) and *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa.Super. 2011). *See also Commonwealth v. Ovalles*, 144 A.3d 957, 970 (Pa.Super. 2016) *quoting Commonwealth v. Orr supra* 38 A.3d at 874.

The Superior Court in *Valentine* found the identification of the defendant to be sufficient as a matter of law based on the victim's observation of the minimally, unconcealed portion of his face, a consistent description of clothing, body type and ethnicity, the prior interactions between the robber and the victim, as well as the victim's positive identification of the defendant at trial and the preliminary hearing. *Commonwealth v. Valentine supra* 101 A.3d at 806.

8

The appellate courts have also held an identification to be legally sufficient where " ... the complainant testified positively and without qualification that Appellant perpetrated the offenses." *Commonwealth v. Patterson*, 940 A.2d 493, 502 (Pa.Super. 2007) *citing Commonwealth v. Wilder*, 259 Pa.Super. 479, 483, 393 A.2d 927, 928 (1978)(Stating a positive identification by one witness is sufficient for conviction.). *See also Commonwealth v. Simmons*, 647 A.2d 568, 571 (Pa.Super. 1994).

Recognizing witness credibility and the weight of witness identifications of the criminal assailant are the fact finder's exclusive prerogative " ' ... a weak identification, together with other trial evidence relevant to the perpetrator's identity may very well be sufficient to convince a jury of the defendant's guilt beyond a reasonable doubt.' " *Commonwealth v. Nelson*, 337 Pa.Super. 292, 300, 486 A.2d 1340, 1344 (1984), *overruled on other grounds, Commonwealth v. Clark*, 746 A.2d 1128 (Pa.Super. 2000) *quoting Commonwealth v. Kloiber*, 378 Pa. 412, 425, 106 A.2d 820, 827. *See also Commonwealth v. Baker*, 531 Pa. 541, 553-54, 614 A.2d 663, 669 (1993).

"[A]ny uncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence, not its sufficiency." *Commonwealth v. Cain*, 906 A.2d 1242, 1245 (Pa.Super. 2006) *citing Commonwealth v. Minnis*, 312 Pa.Super. 53, 57, 458 A.2d 231, 233 (1983). Relatedly, a trial court properly permitted the jury to consider the witness' identification of the defendant and make its own judgment as to the weight, if any, it was to be afforded, although the witness was not able to positively identify the defendant, but merely testified that he resembled the shooter. *Commonwealth v. Floyd*, 494 Pa. 537, 544, 431 A.2d 984, 988 (1981). *See also Commonwealth v. Patterson supra* 940 A.2d at 502 *citing Commonwealth v. Galloway*, 495 Pa. 535, 539, 434 A.2d 1220, 1222 (1981)(Variances in testimony concern the credibility of

9

witnesses and not sufficiency of evidence) and *Commonwealth v. Halye*, 719 A.2d 763, 764

(Pa.Super. 1998)(*en banc*), *appeal denied*, 560 Pa. 699, 743 A.2d 916 (2999), *cert. denied sub*

*nom, Pennsylvania v. Halye*, 529 U.S. 1012, 120 S.Ct. 1287, 146 L.Ed.2d. 233 (2000); and

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa.Super. 2014).

Salient to current considerations, the facts summarized below were credibly established at

Defendant Dickerson's trial.

On June 18, 2015, Javon Abraham was employed and then working as a cashier at a

Sunoco gas station located in Sharon Hill, Delaware County.[23] N.T. 7/11/16, p. 25. Mr.

Abraham testified that he had been past trained on the protocol to follow in the event the station

was robbed. More specifically, he related this instruction consisted of the following: Reporting

the robbery; Complying with the robber(s)' demands; Noting the offender(s)' identity, including

physical features and clothing, as well as the direction the perpetrator(s) fled. N.T. 7/11/16, pp.

25-27.

Approximately 6:15 P.M., that day (June 18, 2015), two (2) African-American males

entered the store, one (1) with a lighter skin tone while the other had a darker complexion. N.T.

7/11/16, pp. 29-30. At trial, Mr. Abraham described their age range as about nineteen (19) to

twenty (20) years old. N.T. 7/11/16, p. 46. The clerk further recounted that the two (2) men

were of medium build and approximately five feet eight inches (5' 8") tall.[24] N.T. 7/11/16, pp.

30, 31. The two (2) assailants were attired in hooded sweatshirts with the hoods pulled over their

heads. N.T. 7/11/16, p. 32. The lower or "shirt" parts of the perpetrators' sweatshirts were

drawn upwards covering the lips and extending to beneath their noses. N.T. 7/11/16, pp. 32-33.

Although portions of the assailants' faces were concealed, the victim could clearly observe the

two (2) men from just above the mouths, through the noses, as well as up to and including right over their eyes. N.T. 7/11/16, pp. 33-34.

Mr. Abraham was positioned at the station's cash register when the two (2) robbers entered the store and immediately confronted him. N.T. 7/11/16, pp. 31-32. The light skinned male proceeded directly around to the employee side of the counter and the dark skinned man remained on the customer side.[25] N.T. 7/11/16, p. 36. The lighter skinned assailant came toward him with a firearm in hand and was standing only one (1) foot away when he pointed the handgun several inches from Mr. Abraham's face. N.T. 7/11/16, pp. 31-32, 34, 35. As the firearm was menacingly just mere inches from his face, Mr. Abraham heard the other offender threaten him two (2) or three (3) times to " 'hand over the money,' or else ... he will shoot." N.T. 7/11/16, pp. 32, 38, 41.

Mr. Abraham testified that during this incident he realized that he knew the light skinned robber to be a frequent patron of the gas station. N.T. 7/11/16, pp. 38-39, 50. This recognition prompted him to exclaim, "[W]hy are you doing this? ... I know you." The handgun wielding male did not respond to this statement. N.T. 7/11/16, p. 39. At trial, Mr. Abraham, without equivocation, identified Defendant Dickerson as the armed, lighter skin toned robber.[26] N.T. 7/11/16, pp. 39-40.

Just after the Defendant brandished the firearm about his face and the other robber uttered the threat of his being shot, Mr. Abraham opened the cash register which contained approximately one hundred dollars ($100.00) of United States currency in marked bills.[27] N.T. 7/11/16, pp. 32, 37, 38, 41. The victim removed this money and handed it to the dark complected male, who placed the cash in a bag and the two (2) men then fled. N.T. 7/11/16, p. 38. Mr. Abraham immediately activated the store's security alarm. N.T. 7/11/16, p. 41.

11

Sunoco's security department called the station and advised they would contact law enforcement and responding police arrived five (5) minutes later. N.T. 7/11/16, pp. 41-43.

A few days after the robbery, on June 22, 2015, Mr. Abraham was again working at the Sunoco station when he saw a woman he thought to be Defendant Dickerson's mother outside the store purchasing gas. N.T. 7/11/16, pp. 48, 49. Prior to the robbery, the Defendant and this woman Mr. Abraham believed to be his mother would on various occasions visit the gas station in a blue, Chevrolet SUV. N.T. 7/11/16, pp. 48, 50. It was this motor vehicle (blue, Chevrolet SUV) the victim once more saw this same woman operating on that date (June 22, 2016), less than a week following the robbery. N.T. 7/11/16, pp. 48-49, 50. The victim noted the Chevrolet's license plate and provided this information to the investigating police. N.T. 7/11/16, p. 49.

Mr. Abraham relatedly explained that Defendant Dickerson had patronized the store about a dozen times previous to the robbery (June 18, 2015) and he had observed during the course of approximately half those instances the Defendant in this same blue, Chevrolet SUV. N.T. 7/11/16, pp. 71, 76.

Mr. Abraham also described there were numerous times when Defendant Dickerson visited the station and the two (2) would often exchange pleasantries. N.T. 7/11/16, p. 71. Mr. Abraham and the Defendant had discussions about Defendant Dickerson's tattoos and the Defendant even provided the victim his phone number; however, Mr. Abraham did not save the same in his cellular phone. N.T. 7/11/16, pp. 71-72.

Mr. Abraham at trial also recounted his visit to the Sharon Hill Police Department on July 7, 2015. N.T. 7/11/16, p. 59. The victim described how he then viewed a photo array and was requested to circle or initial any individual, if he recognized that person as one (1) of the males

12

who committed the robbery. N.T. 7/11/16, pp. 59-61. Mr. Abraham testified that when shown this photo array he readily identified one (1) of the robbers. N.T. 7/11/16, p. 61.

The prosecutor next presented the victim with the photo array from July 7, 2015. N.T. 7/11/16, pp. 61-62. *See also* Commonwealth Exhibit C-3 – Photo Array. This pictorial display contained eight (8) photographs of similarly appearing African-American males. N.T. 7/11/16, p. 62. *See also* Commonwealth Exhibit C-3 – Photo Array. Mr. Abraham explained that he recognized photograph number six (6) as one (1) of the robbers and further at trial identified this individual as Defendant Dickerson. N.T. 7/11/16, pp. 62-63. *See also* Commonwealth Exhibit C-3 – Photo Array. The victim testified that he circled and signed the Defendant's photograph (No. 6) in the array per that which the police instructed. N.T. 7/11/16, pp. 63-64. *See also* Commonwealth Exhibit C-3 – Photo Array.

Chief Richard Herron, Jr., Sharon Hill Police Department, also testified as a Commonwealth witness at the trial. Chief Herron was then the detective responsible for investigating the June 18, 2015, Sunoco gas station robbery. N.T. 7/13/16, pp. 113-14.

Chief Herron was contacted a few days after the robbery and advised that the perpetrator of the robbery had come back to the store and was a passenger in a blue, Chevrolet SUV. N.T. 7/13/16, p. 115. Chief Herron was also provided the license plate number belonging to this blue, Chevrolet SUV, Pennsylvania HVN7672. N.T. 7/13/16, pp. 115, 116-17. *See also* Commonwealth Exhibit C-7 – Chief Herron's Report. Using this information, Chief Herron determined the vehicle was registered to a Robin Downing with an address of 1012 Pine Street, Darby, PA. N.T. 7/13/16, p. 118. A further search revealed the Defendant as well lived at this residence. N.T. 7/13/16, p. 118.

13

Per his testimonial appearance, Chief Herron also detailed that he created a photo array containing Defendant Dickerson's picture and presented the same on July 7, 2015, to Mr. Abraham. N.T. 7/13/16, p. 119. *See also* Commonwealth Exhibit C-3 – Photo Array. Chief Herron testified he told Mr. Abraham " ... to take his time, to look at each picture thoroughly. If there was anyone in there that he recognized as a possible actor from the night of the robbery, he was instructed to circle the picture, sign his name, the date and the time on the photograph." N.T. 7/13/16, pp. 120-21, 122. The chief explained after " ... approximately 10-15 seconds and, without hesitation, [Mr. Abraham] immediately pointed to number six and stated that was one of the males that had robbed him that night." N.T. 7/13/16, p. 121. Chief Herron at trial identified Defendant Dickerson as the individual in the array's position six (6). N.T. 7/13/16, pp. 121-22.

Foremost, the Defendant by these error assignments maintains on appeal that the trial evidence was as a matter of law insufficient to establish his identification as the gun wielding robber and his convictions at bar thus cannot be legally sustained. *See* Statement of Matters Complained, No. 2(b)(c)(d). Based on the above-recounted, salient facts established at trial, as well as accepting the evidence in the light most beneficial to the prosecution and those reasoned inferences flowing from such, Defendant Dickerson's identification driven arguments and sufficiency challenges otherwise are meritless. *Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

The prosecution need not as a matter of law have demonstrated the identification of the Defendant were " ... positive and certain." *See Commonwealth v. Valentine supra* 101 A.3d at 806 *quoting Commonwealth v. Bruce supra* 717 A.2d at 1037 and *Commonwealth v. Orr supra*

14

38 A.3d at 874. *See also Commonwealth v. Ovalles supra* 144 A.3d at 970 *quoting Commonwealth v. Orr supra* 38 A.3d at 874. Moreover, an identification by just one (1) witness can be legally sufficient to sustain a defendant's conviction. *Commonwealth v. Patterson supra* 940 A.2d at 502 *citing Commonwealth v. Wilder supra* 259 Pa.Super. at 483, 393 A.2d at 928. *See also Commonwealth v. Simmons supra* 647 A.2d at 571.

On reviewing the totality of the circumstances seen most favorable to the Commonwealth, it was proven as a matter of law that Defendant Dickerson was the firearm brandishing assailant, who on June 18, 2015, robbed at gun point, Mr. Abraham, the store's clerk. *Commonwealth v. Valentine supra* 101 A.3d at 806 *quoting Commonwealth v. Bruce supra* 717 A.2d at 1037 and *Commonwealth v. Orr supra* 38 A.3d at 874; and *Commonwealth v. Ovalles supra* 144 A.3d at 970 *quoting Commonwealth v. Orr supra* 38 A.3d at 874. *See also Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

Mr. Abraham in his training as a Sunoco employee was instructed to pay careful attention to detail when victimized during a robbery. N.T. 7/11/16, pp. 25-27. At trial, Mr. Abraham recounted the age, complexion, height and clothing of the two (2) assailants. N.T. 7/11/16, pp. 29-30, 31, 46. While the two (2) men had their visages partially covered, he was able to clearly see the area about their facial features from just above the mouths through and including the eyes, particularly Defendant Dickerson, as he stood literally within one (1) foot of him. N.T. 7/11/16, pp. 31-32, 33-34, 35. This immediate, physical proximity of the Defendant permitted

15

Mr. Abraham to recognize Defendant Dickerson, a frequent patron of the gas station and with whom he had on numerous occasions directly interacted. N.T. 7/11/16, pp. 38-39, 50, 71-72.

Moreover, only a few days following the robbery, Mr. Abraham saw a motor vehicle at the gas station that he thought was being operated by the Defendant's mother. N.T. 7/11/16, pp. 48, 50. This belief of the victim was firmly grounded on his previous and various observations of Defendant Dickerson in the company of this same woman, along with his numerous, past and direct interactions with the Defendant while working which went well beyond a store clerk merely attending to a customer, including many personal conversations and Defendant Dickerson providing Mr. Abraham with his telephone number. N.T. 7/11/16, pp. 48-49, 50, 71-72. The nature, frequency, and timing relative to the crime of these prior contacts between the two (2) men were such that during the robbery the victim recognized the Defendant asking of him, "[W]hy are you doing this? ... I know you." N.T. 7/11/16, p. 39.

Mr. Abraham noted the blue, Chevrolet SUV's license plate and forwarded this information to the investigating authorities. N.T. 7/11/16, p. 49. Chief Herron then determined, *inter alia*, that the Defendant resided at the same home to which this vehicle was registered. N.T. 7/13/16, pp. 115-17. *See also* Commonwealth Exhibit C-7 – Chief Herron's Report. Chief Herron also referenced via his criminal complaint the Defendant is five feet nine inches (5'9") tall which comports with the Mr. Abraham's description of the gun brandishing robber's height. N.T. 7/11/16, pp. 30, 31. N.T. 7/13/16, p. 123. Similarly, the criminal complaint lists the Defendant's date of birth as December 30, 1996, making him nineteen and one half (19.5) years of age at the time of the robbery consistent with the victim's description of the armed assailant as being approximately nineteen (19) or twenty (20) years old. N.T. 7/11/16, p. 46. *See also* Criminal Complaint.

16

Mr. Abraham's in-court identifying of Defendant Dickerson at trial as the firearm wielding, light skinned robber was absent any hesitancy and/or qualifications. N.T. 7/11/16, pp. 39-30. The certainty of Mr. Abraham's trial identification that the Defendant was the robber who went around the store's counter and brandished about his face a handgun was highlighted by the below cross-examination exchange:

Ms. Gaertner:

> So based on that you thought he was someone who had been in the store before, is that correct?

Mr. Abraham:

> I didn't thought [*sic*]. I knew.

N.T. 7/11/16, p. 70. *See also* N.T. 7/11/16, pp. 31-35.

Likewise, only a few moments later his identification was once more challenged by defense counsel as follows: "So, one further time, based on seeing nose and eyes and with a gun pointed in your face, you're still – you're still sure you know who it was that day?" to which the victim replied, "Yes." N.T. 7/11/16, p. 92.

In further support of his identifying the Defendant, the victim shortly after the robbery per his own testimony, as well as that of Chief Herron, identified Defendant Dickerson via the photo array as one (1) of the offenders, " ... without hesitation ... ." N.T. 7/11/16, pp. 62-64. N.T. 7/13/16, pp. 119-21, 122. *See also* Commonwealth Exhibit C-3 – Photo Array.

Given the foregoing evidence at trial, when viewed in the light most favorable to the Commonwealth, together with the rational inferences such reasonably allows, the identification of Defendant Dickerson being the armed robber is legally sound. Although the Defendant's face throughout the robbery was partially obscured, Mr. Abraham's opportunity otherwise to observe him was that of being in his immediate physical proximity with the trial evidence suggesting the

store's interior lighting allowed for such expected observations of Defendant Dickerson only being approximately a foot away from him. N.T. 7/11/16, pp. 31-39. Per his past training regarding what to do in the event of being victimized, Mr. Abraham was attentively watchful through the course of the robbery, including as to those circumstances material to the Defendant's identification. N.T. 7/11/16, pp. 25-27, 31-40. His description of the armed robber's height and age was consistent with those characteristics of Defendant Dickerson. N.T. 7/11/16, pp. 31-40. N.T. 7/13/16, p. 123. *See also* Criminal Complaint and Probable Cause Affidavit. Without hesitation, Mr. Abraham shortly after the robbery via a photo array readily identified the Defendant. N.T. 7/11/16, pp. 59-64. N.T. 7/13/16, pp. 119-22. *See also* Commonwealth Exhibit C-3 – Photo Array. Mr. Abraham's in-court identification of Defendant Dickerson as the light skinned, firearm brandishing robber was certain and without any reservations. N.T. 7/11/16, pp. 39-40, 70, 92. Unlike most other convenience store robberies where the perpetrator is a stranger previously unknown to the clerk-victim, his prior contacts with the Defendant were of such a nature and frequency that Mr. Abraham during the robbery then told Defendant Dickerson, "I know you." N.T. 7/11/16, p. 39. *See also* N.T. 7/11/13, pp. 48-50, 71-72, 76. The totality of this evidence combines to demonstrate the legal sufficiency of the Defendant's identification as the handgun wielding robber. *Commonwealth v. Valentine supra* 101 A.3d at 806 *quoting Commonwealth v. Bruce supra* 717 A.2d at 1037 and *Commonwealth v. Orr supra* 38 A.3d at 874.

The trial record having established as a matter of law Defendant Dickerson was the armed assailant, his convictions are otherwise supported by legally sufficient evidence.[28]

This court acting as the non-jury fact-finder was "free to resolve any doubts regarding [the] [D]efendant's guilt." *Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting*

18

*Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549. Similarly, the court as the " ... sole judge[] of the credibility and weight of all testimony" was "free to believe all, part or none of the evidence." Pa. SSJI (Crim) 2.04. *See also Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903 A.2d at 1276-77. The Defendant's present error assignments challenging the sufficiency of the evidence relating to his robbery,[29] criminal conspiracy to commit robbery,[30] and possessing instruments of crime convictions are meritless.[31] *See* Statement of Matters Complained, No. 2(b)(c)(d).

As " ... the [trial] record contains support for the convictions," the guilty verdicts must remain as this court concluded. *Commonwealth v. Davis supra* 861 A.2d at 323-24 *citing Commonwealth v. Marks supra* 704 A.2d at 1098 *citing Commonwealth v. Mudrick supra* 510 Pa. at 308, 507 A.2d at 1213.

### B. Weight of the Evidence

The Defendant by his final appellate complaint seemingly avers as to all three (3) of his convictions (robbery,[32] criminal conspiracy to commit robbery,[33] and possessing instruments of crime)[34] that the "verdict was against the weight of the evidence." *See* Statement of Matters Complained, No. 2(a). In support of this error assignment, Defendant Dickerson challenges the victim's identification as "[t]he only evidence presented to place the Appellant at the scene of the crime was the identification of the eye witness, who testified that he only saw the assailant's eyes and nose." *See* Statement of Matters Complained, No. 2(a). An examination of the trial record under the controlling standard of review shows this appellate complaint to as well be without merit.

19

For a weight of the evidence attack to be properly raised on appeal, such a claim " … must [have been] preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012) *citing* Pa.R.Crim.P. 607 and *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super. 2011). "Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim." *Commonwealth v. Bryant*, 57 A.3d 191, 196 (Pa.Super. 2012) *citing Commonwealth v. Bond*, 604 Pa. 1, 16-17, 985 A.2d 810, 820 (2009).

Defendant Dickerson through counsel having advanced such a claim via his timely lodged post-sentence motions, this weight of the evidence challenge for the pending appellate review has rightly been preserved. *See* Post-Sentencing Motions dated November 4, 2016. N.T. 11/23/16. *See also Commonwealth v. Lofton supra* 57 A.3d at 1273 *citing* Pa.R.Crim.P. 607 and *Commonwealth v. Priest supra* 18 A.3d at 1239.

A challenge to the weight of the evidence " ' … concedes that there is sufficient evidence to sustain the verdict.' " *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa.Super. 2005) *quoting Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa.Super. 2003), *appeal denied*, 574 Pa. 773, 833 A.2d 143 (2003). Furthermore, " ' … the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.' " *Id.* 866 A.2d at 1101-02 (Emphasis omitted) *quoting Commonwealth v. Sullivan supra* 820 A.2d at 805-06. Deference is yet afforded to the guilty verdicts recognizing in its exclusive fact-finding function that the court sitting non-jury was " … to adjudge the credibility of witnesses and to determine whether their testimony, if believed, establishes the elements of the offenses charged." *Commonwealth v. Stays*, 70 A.3d 1256, 1267 (Pa.Super. 2013).

20

A weight of the evidence claim is initially committed to the trial court's discretion subject to appellate review of whether such discretion was manifestly abused per that further detailed below:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [jury] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [jury's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Brown*, 71 A.3d 1009, 1013 (Pa.Super. 2013). *See also Commonwealth v. Karns*, 50 A.3d 158, 165 (Pa.Super. 2012); *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa.Super. 2004) *quoting Davis v. Mullen*, 565 Pa. 386, 390, 773 A.2d 764, 766 (2001) *citing Catalano v. Bujak*, 537 Pa. 155, 161, 642 A.2d 448, 450 (1994); *Commonwealth v. Dupre supra* 866 A.2d at 1101-02; *Commonwealth v. Sullivan supra* 820 A.2d at 805-06; *Commonwealth v. Kim*, 888 A.2d 847, 851 (Pa.Super. 2005) *quoting Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003); and *Commonwealth v. Widmer*, 560 Pa. 308, 321, 744 A.2d 745, 753 (2000) *citing Commonwealth v. Brown*, 538 Pa. 410, 436, 648 A.2d 1177, 1189 (1994).

A trial court judge's decision regarding a weight of the evidence challenge is given measured deference "[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Commonwealth v. Widmer supra* 560 Pa. at 321, 744 A.2d at 753 *citing Commonwealth v. Farquharson*, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976). An appellate court will not substitute its decision for that reached by the trial court, " '[i]nstead, this [Superior] Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have

21

made in the first instance.' " *Commonwealth v Stays supra* 70 A.3d at 1268 *quoting Commonwealth v. West*, 937 A.2d 516, 521 (Pa.Super. 2007) *citing Commonwealth v. Cousar*, 593 Pa. 204, 223, 928 A.2d 1025, 1036 (2007).

The Pennsylvania Supreme Court has described this discretion of the trial court and the abuse finding necessary to relief on appeal related to a weight of the evidence claim as follows:

> [The proper use of trial court discretion] ... imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Widmer supra* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993).

Only if it can be found that the trial judge committed an abuse of discretion will a weight of the evidence error assignment be found successful. *Commonwealth v. Brown supra* 71 A.3d at 1013. The abuse of discretion required in such a determination is one "[w]hen 'the figure of Justice totters on her pedestal,' or when 'the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson supra* 860 A.2d at 581 *quoting Nudelman v. Gilbride*, 436 Pa.Super. 44, 51, 647 A.2d 233, 237 (1994) *quoting Lupi v. Keenan*, 396 Pa. 6, 15-16, 151 A.2d 447, 452-53 (1959) (Musmanno, J., dissenting).

Viewing this challenge under the abuse of discretion standard and with the required measured deference, this court did not err in its consideration of the trial evidence and finding Defendant Dickerson guilty. *Commonwealth v. Widmer supra* 560 Pa. at 321, 744 A.2d at 753

22

*citing Commonwealth v. Farquharson supra* 467 Pa. at 60, 354 A.2d at 550. *See also Commonwealth v Stays supra* 70 A.3d at 1268 *quoting Commonwealth v. West supra* 937 A.2d at 521 *citing Commonwealth v. Cousar supra* 593 Pa. at 223, 928 A.2d at 1036.

Having been the factfinder at the Defendant's trial, listened attentively to the entirety of the evidentiary presentation, and observed the testimonial demeanor of the various prosecution and defense witnesses,[35] as well as heard the respective arguments of counsel, this court concluded Defendant Dickerson had been proven guilty beyond a reasonable doubt as to robbery,[36] criminal conspiracy to commit robbery,[37] and possessing instruments of crime.[38] Most certainly, had its consideration of the trial record left this court with any reasoned doubt as to his guilt, this court well appreciating the prosecution's fundamental burden of proof would have acquitted the Defendant.

The trial record is devoid of any evidence of " '... partiality, prejudice, bias or ill will.' " *Commonwealth v. Widmer supra* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc. supra* 533 Pa. at 447, 625 A.2d at 1184-85. The instant record likewise lacks any evidence that the law was overridden or misapplied at any point of the trial. *Id.* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc. supra* 533 Pa. at 447, 625 A.2d at 1184-85. There is no evidence that the above-captioned matter was tried on any basis other than fairly and dispassionately by this court.

Based on the applicable law and the above-detailed facts this court found credibly proven at trial, Defendant Dickerson's appellate complaint that the weight of the evidence did not support the court's decision to find him guilty of robbery,[39] criminal conspiracy to commit robbery,[40] and possessing instruments of crime[41] is meritless.

23

### *III. Conclusion*

For all the above reasons, Defendant Dickerson's convictions and judgment of sentence should be affirmed.

BY THE COURT:



Kevin F. Kelly     J.

24

[1] 18 Pa.C.S. §3701(a)(1)(ii).
[2] 18 Pa.C.S. §907(a).
[3] 18 Pa.C.S. §903.
[4] 18 Pa.C.S. §3701(a)(1)(ii).
[5] 18 Pa.C.S. §907(a).
[6] 18 Pa.C.S. §903(3701(a)(1)(ii)).

[7] Just prior to the commencement of the trial's evidentiary presentation, absent objection, the Commonwealth, of-record, in open court, withdrew all other counts and/subcounts of its past lodged criminal information, except those decided by the court's verdict. N.T. 7/11/16, p. 12. *See also* Verdict dated July 14, 2016.

[8] 18 Pa.C.S. §3701(a)(1)(ii).
[9] 18 Pa.C.S. §907(a).
[10] 18 Pa.C.S. §903(3701(a)(1)(ii)).

[11] The court further memorialized its post-verdict bail modification via an order of that same day (July 14, 2016). *See* Order dated July 14, 2016.

[12] Although sentencing was originally scheduled to take place on September 13, 2016, the Defendant shortly prior to this date had retained new counsel, Shaka M. Johnson, Esquire, who was unavailable to attend this listing. Additionally, the presentence aids as past ordered by this court were not then completed. N.T. 7/14/16, pp. 6-7 and N.T. 9/13/16, pp. 3-5.

[13] 18 Pa.C.S. §3701(a)(1)(ii).
[14] 18 Pa.C.S. §903(3701(a)(1)(ii)).
[15] 18 Pa.C.S. §3701(a)(1)(ii).
[16] 18 Pa.C.S. §907(a).
[17] 18 Pa.C.S. §903(3701(a)(1)(ii)).
[18] 61 Pa.C.S. §§3901 *et seq.*
[19] 61 Pa.C.S. §§4501 *et seq.*

[20] Paragraph number one (1) of Defendant Dickerson's statement of matters complained does not aver an error assignment, but simply recognizes that his extension application for the statement's filing was by this court allowed. *See* Statement of Matters Complained, No. 1. *See also* Petition for Extension of Time dated January 25, 2017, and Order dated February 3, 2017.

[21] The Defendant's sufficiency of the evidence error assignments are detailed below:

> b) The evidence was insufficient as a matter of law to convict the Appellant of Robbery - Threat Immed Ser Injury [*sic*]. The Commonwealth failed to prove beyond a reasonable doubt that (1) Appellant was the assailant, and (2) Appellant threatened another with or intentionally put him in fear of immediate serious bodily injury.
>
> c) The evidence was insufficient as a matter of law to convict the Appellant of Poss Instrument of Crime W/Int [*sic*]. The Commonwealth failed to prove beyond a reasonable doubt that (1) Appellant possessed a firearm, (2) the firearm was an instrument of crime, and (3) Appellant possessed the item with intent to employ it criminally.
>
> d) The evidence was insufficient as a matter of law to convict the Appellant of Conspiracy to commit robbery Threat of Immed Bodily Injury [*sic*] with an unknown individual. The Commonwealth failed to prove beyond a reasonable doubt that (1) an agreement existed between Appellant and an unidentified individual, (2) Appellant and the unidentified individual intended to promote or

25

facilitate the committing of the crime, and (3) Appellant or the unidentified individual committed an overt act in furtherance of the conspiracy.

*See* Statement of Matters Complained, No. 2(b)(c)(d).

[22] Accepting the trial evidence legally proved Defendant Dickerson's identification, the prosecution's evidentiary presentation also unquestionably established that he and a criminal cohort entered a local Sunoco gas station each with their shirts pulled up to their mouths and the hoods of their sweatshirts pulled down onto their foreheads. N.T. 7/11/16, pp. 29-34. The assailants proceeded directly to the store's clerk with the gun toting Defendant walking around the counter to directly confront the victim-clerk. N.T. 7/11/16, pp. 31-32, 36. While Defendant Dickerson brandished his firearm about the face of the clerk-victim, his co-conspirator verbally threatened the young man at least twice to " ... hand over the money, or else ... he will shoot." N.T. 7/11/16, pp. 32, 38, 41. Right after the victim-clerk complied and surrendered the shop's money to the unknown co-assailant, both he and the Defendant together immediately fled the scene. N.T. 7/11/16, pp. 38, 41.

Per that further discussed *infra*, these facts recounted immediately above with the Defendant's identification having been proven as a matter of law most certainly demonstrate that all other necessary elements of his convictions were legally established. *See* Endnote No. 28, p. 18.

[23] Mr. Abraham's testimony began with the concession that he did not want to be testifying in court about the robbery and his victimization, but was only appearing as a prosecution witness because he was so subpoenaed. N.T. 7/11/16, pp. 23-25.

[24] The victim's height descriptions of the robbers were based on his own knowledge that he is five feet five inches (5' 5") tall and the perpetrators were a few inches taller than him. N.T. 10/28/16, p. 76. Following Mr. Abraham's photo array identification, Chief Herron drafted the criminal complaint at bar which listed the Defendant's height as five feet nine inches (5' 9"). N.T. 7/13/16, p. 123.

[25] The counter was most modest in size approximating that of a household table and the only physical separation between the shop's public area and that of the cashier. Mr. Abraham was not ensconced in some protective like cubicle affording him at least a measure of safety from the robbers. *See* Commonwealth Exhibit C-2 – Sunoco Surveillance Footage from June 18, 2015. *See also* N.T. 7/11/16, p. 36.

[26] The victim was presented at trial with the preliminary hearing notes. Per this transcript, Mr. Abraham at the preliminary hearing first refused to respond to questions about the armed robber's identity and on being advised by the presiding magisterial district judge that he was required to answer such inquiries testified that the individual at the preliminary hearing, the Defendant, was not one (1) of the robbers from June 18, 2015. Despite such reluctance to identify the Defendant at the preliminary hearing, when confronted at the same proceeding with the photo array, Mr. Abraham acknowledged past executing, dating, circling, and identifying the individual in photograph six (No. 6), as the firearm wielding robber, Defendant Dickerson. N.T. 7/11/16, pp. 65-69, 77-91. *See also* Commonwealth Exhibit C-4 – Preliminary Hearing Transcript, pp. 10-14, 16 and Statement of Matters Complained, No. 2(a).

Because such equivocal pre-trial identification testimony is more properly seen to be within the purview of the Defendant's challenge to the weight of the evidence appellate complaint given the standard controlling legal sufficiency claims, it is in that context discussed below. *Commonwealth v. Cain supra* 906 A.2d at 1245 *citing Commonwealth v. Minnis supra* 312 Pa.Super. at 57, 458 A.2d at 233. *See also Commonwealth v. Patterson supra* 940 A.2d at 502 *citing Commonwealth v. Galloway supra* 495 Pa. at 539, 434 A.2d at 1222 and *Commonwealth v. Halye supra* 719 A.2d at 764; and *Commonwealth v. Trinidad supra* 96 A.3d at 1038.

[27] At trial, Mr. Abraham explained that connected to the register is a hidden drawer containing over one hundred dollars ($100.00) of "marked" United States currency and Sunoco employees in the event of a robbery are trained to surrender this "marked" money from this secreted compartment. N.T. 7/11/16, pp. 36-37.

[28] In light of the above summarized trial evidence, it just cannot be reasonably or otherwise argued that Defendant Dickerson did not in the course of committing a theft threaten another with or intentionally put the clerk-victim in

fear of immediate serious bodily injury. 18 Pa.C.S. §3701(a)(1)(ii). *See also Commonwealth v. Kubis*, 978 A.2d 391, 396 (Pa.Super. 2009) and *Commonwealth v. Thomas*, 376 Pa.Super. 455, 460, 546 A.2d 116, 119-10 (1988) *citing Commonwealth v. Mays*, 248 Pa.Super. 318, 321, 375 A.2d 116, 118 (1977); *Commonwealth v. Duffey*, 519 Pa. 348, 357-58, 548 A.2d 1178, 1182 (1988) *citing Commonwealth v. Brown*, 506 Pa. 169, 176, 484 A.2d 738, 741 (1984); *Commonwealth v. Matthew*, 589 Pa. 487, 494-95, 909 A.2d 1254, 1259 (2006); *Commonwealth v. Hall*, 574 Pa. 233, 242, 830 A.2d 537, 542 (2003); *Commonwealth v. Alford*, 880 A.2d 666, 675 (Pa.Super. 2005) *citing Commonwealth v. Hopkins*, 747 A.2d 910, 914-15 (Pa.Super. 2000); and Pa. SSJI (Crim) 15.3701(A). *See also* Statement of Matters Complained, No. 2(b). Likewise, this evidence most certainly established the handgun was an instrument of crime and possessed by the Defendant with an intent to employ the firearm criminally. 18 Pa.C.S. §907(a). *See also Commonwealth v. Baskerville*, 452 Pa.Super. 82, 93, 681 A.2d 195, 201 (1996) *citing Commonwealth v. Glover*, 399 Pa.Super. 610, 616, 582 A.2d 1111, 1114 (1990) *citing Commonwealth v. Jackson supra* 506 Pa. at 473, 485 A.2d at 1104; *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super. 2000) *quoting Commonwealth v. Johnson*, 719 A.2d 778, 784 (Pa.Super. 1998) *(en banc)*, *appeal denied*, 559 Pa. 689, 739 A.2d 1056 (1999) *citing Commonwealth v. Swerdlow*, 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176–1177 (1994); *Commonwealth v. Sanchez*, 82 A.3d 943, 973 (Pa. 2013) *citing Commonwealth v. Weimer*, 602 Pa. 33, 39, 977 A.2d 1103, 1106 (2009); *Commonwealth v. Murphy*, 577 Pa. 275, 292, 844 A.2d 1228, 1238 (2004) *citing Commonwealth v. Wayne*, 553 Pa. 614, 630, 720 A.2d 456, 463-64 (1998); *Commonwealth v. Ruiz*, 819 A.2d 92, 98 (Pa.Super. 2003) *quoting Commonwealth v. Lambert*, 795 A.2d 1010, 1016-17 (Pa.Super. 2002) *quoting Commonwealth v. Galindes*, 786 A.2d 1004, 1011 (Pa.Super. 2001); *Commonwealth v. Bachert*, 271 Pa.Super. 72, 77, 412 A.2d 580, 583 (1979); and Pa. SSJI (Crim) 12.903(A)(B). *See also* Statement of Matters Complained, No. 2(c). This trial evidence similarly proves without question an agreement to commit a robbery between Defendant Dickerson and his unknown confederate with the intent to facilitate or promote the same, as well as the obvious overt act of the completed armed robbery's perpetration. 18 Pa.C.S. §903(3701(a)(1)(ii)). *See also Commonwealth v. Gladden*, 445 Pa.Super. 434, 444, 665 A.2d 1201, 1206 (1995) and Pa. SSJI (Crim) 12.907(A). *See also* Statement of Matters Complained, No. 2(d). *See generally Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Kriegler supra* 127 A.3d at 847 *quoting Commonwealth v. Hartie supra* 894 A.2d at 903-04 *quoting Commonwealth v. Thomas supra* 867 A.2d at 597.

[29] 18 Pa.C.S. §3701(a)(1)(ii).
[30] 18 Pa.C.S. §903(3701(a)(1)(ii)).
[31] 18 Pa.C.S. §907(a).
[32] 18 Pa.C.S. §3701(a)(1)(ii).
[33] 18 Pa.C.S. §903(3701(a)(1)(ii)).
[34] 18 Pa.C.S. §907(a).

[35] Mr. Abraham was questioned at trial by the attorneys about inconsistencies between his preliminary hearing and trial identification testimony. N.T. 7/11/16, pp. 65-69, 77-91. However, these discrepancies were clarified at trial as discussed immediately below through further inquiries by both the prosecution and defense counsel.

Relevant to the Defendant's identification, Mr. Abraham at the preliminary hearing continuously offered, "I'm not comfortable answering that question," and on being pressed by the magisterial district judge to provide an answer he repeated his "discomfort" and/or claimed he did not then recognize the Defendant. N.T. 7/11/16, pp. 66, 68, 69, 77-78, 80-81, 86, 89. *See also* Commonwealth Exhibit C-4 – Preliminary Hearing Transcript, pp. 8, 11, 21-22, 24, 25, 26.

On further inquiry by the Commonwealth at trial into his past reluctance to then answer these questions before the magisterial district court, Mr. Abraham provided credible explanations about his "uncomfortableness" in not only identifying the Defendant, but also appearing at the preliminary hearing and trial as a prosecution witness. N.T. 7/11/16, pp. 66, 83-84. Eventually, Mr. Abraham revealed his past and present concerns with testifying as a witness for the Commonwealth per the following:

Mr. Abraham:

I didn't get hurt, and it wasn't my money. Right -- ... -- if it would've put me in danger, or, like, if I was in danger, or like

27

— not — if I was hurt, I probably would've said something. If you were to hurt one of my family members, I would've said something, but since he just did it, I guess, for the money, I'm guessing. I mean, he got like $120. Sunoco, we make that money right back up. I wasn't hurt. I was just — I was just over the situation. And I just didn't want to come here and just tell, I guess. ...

Mr. DiRosato:

What you've told the Court here today, is that the truth?

Mr. Abraham:

Yes.

Mr. DiRosato:

*Who did you see rob you back on June 18th of 2015?*

Mr. Abraham:

*Him right here. ...*

Mr. DiRosato:

... Do you feel obligated to come in here and testify like it was some —

Mr. Abraham:

Yes, because I — from the beginning, the first testimony or the — yeah, the first Court date I had, I told you I didn't want to come, and you all made me came [*sic*].

Mr. DiRosato:

Well, did you tell me, or did you tell someone else?

Mr. Abraham:

The police officers ...

Mr. DiRosato:

So who did you tell when you got notice to come to the District Court here, the local Court?

Mr. Abraham:

*Everyone that I spoke to, the officers. Everyone. I told them I did not want to testify because I was not comfortable.*

28

Mr. DiRosato:

So, again, what was making you so uncomfortable?

Mr. Abraham:

Because I used to work at Sunoco, and how small it is, anybody can come - - if I was to be like, he did it – *I saw him a couple days after that, and anything could've happened.* He could've still came [*sic*] in the store and did anything. I just wasn't comfortable.

Mr. DiRosato:

Did you ever see him after the preliminary hearing the Defendant, after October 28th, come in your store?

Mr. Abraham:

Yes.

Mr. DiRosato:

When did you stop working at Sunoco?

Mr. Abraham:

I can't remember the date exactly. I can't remember the exact date.

Mr. DiRosato:

Was it after the preliminary hearing, that local District Court hearing?

Mr. Abraham:

Yes.

Mr. DiRosato:

What about your safety? Did safety ever impact your decision to testify or not want to testify?

Mr. Abraham:

Yes.

Mr. DiRosato:

What about your safety? What were you concerned about? If he didn't hurt you the first time, why would you've thought you'd be hurt after?

29

Mr. Abraham:

He'd be – just my safety. It was just – if I see him in the streets, anything could happen. I'm not saying – he is capable of, like, hurting me, but I'm – I wasn't scared, just anything could happen.

Mr. DiRosato:

So let's clear up –

Mr. Abraham:

I could get –

Mr. DiRosato:

– one more thing before I –

Mr. Abraham:

– I could get jumped. Anything could happen.

Mr. DiRosato:

Do you remember telling the Court back on October 28th of 2015 that what you meant by not comfortable is, 'I'm working at Sunoco, and it's open.'

Mr. Abraham:

Um-hum.

Mr. DiRosato:

Is that a yes?

Mr. Abraham:

Yes.

Mr. DiRosato:

Was that going to your safety, the concerns for your safety?

Mr. Abraham:

Yes.

Mr. DiRosato:

And then on page 26, line 13, you were asked, 'Sir, you started to answer the question by saying Sunoco was open.' Answer at 15, 'Yes.' The question was, 'Explain what you mean.' Do you remember telling the Court on line 17,

30

'Anything could happen, like anyone could come in the store and do anything to me.' And then the question posed to you is, 'Do anything similar to what happened on June 18th?' Answer, 'Yes.' Question, 'So that makes you uncomfortable, that it could happen again, is that what you're telling the Court?' Your answer was, 'Yes.'

Mr. Abraham:

Yes.

Mr. DiRosato:

*When you testified at the preliminary hearing, was a concern for your safety one of the driving factors about your answers?*

Mr. Abraham:

*Yes.*

N.T. 7/11/16, pp. 85-87, 90-91.  (Emphasis added.)  *See also* Commonwealth Exhibit C-4 – Preliminary Hearing Transcript.

In addition to Mr. Abraham's explanation that it was concerns about his safety which led him to not identify Defendant Dickerson as the gun toting robber at the preliminary hearing, he acknowledged the Defendant was in fact present before the magisterial district court.  N.T. 7/11/16, p. 66.  More specifically, Mr. Abraham testified as follows:

Mr. DiRosato:

So, the person in that Courtroom [*sic*] back on October 28th wasn't a different person.  You just didn't want to make the identification?

Mr. Abraham:

Yes.

N.T. 7/11/16, p. 67. *See also* Commonwealth Exhibit C-4 – Preliminary Hearing Transcript, pp. 65-69, 77-91.

This court's accepting in its factfinding function Mr. Abraham's identification of Defendant Dickerson was grounded on such material circumstances' totality, all of which combined to convince it beyond a reasonable doubt that the Defendant was in fact the firearm wielding robber.

Although Defendant Dickerson's face was partially concealed throughout the robbery, Mr. Abraham was in his immediate physical proximity at a distance of approximately one (1) foot and otherwise afforded a clear opportunity to observe the Defendant under the store's interior lighting conditions.  N.T. 7/11/16, pp. 31-39.

Mr. Abraham had received past training about what he should do if victimized while working at the gas station and was attentive throughout the robbery per that instruction, including as to those circumstances bearing on Defendant Dickerson's identification.  N.T. 7/11/16, pp. 25-27, 31-40.

31

His description of the armed robbery's ethnicity, body build, height and age was consistent with those of the Defendant. N.T. 7/11/16, pp. 31-40. N.T. 7/13/16, p. 123. *See also* Criminal Complaint and Probable Cause Affidavit.

Shortly after the robbery (July 7, 2015), Mr. Abraham, without hesitation, when shown a photo array by Chief Herron readily identified Defendant Dickerson as the armed robber. N.T. 7/11/16, pp. 59-61, 63-64. N.T. 7/13/16, pp. 119-22. Mr. Abraham at trial readily confirmed his past pictorial identification of the Defendant and further identified the photograph he selected (No. 6) as being that of Defendant Dickerson. N.T. 7/11/16, pp. 61-63. *See also* Commonwealth Exhibit C-3 – Photo Array.

While at the preliminary hearing, Mr. Abraham for those reasons detailed above refused to make an in-court identification of the Defendant, he then did when confronted with the photo array acknowledge having signed, dated, and circled picture number six (6), identifying the Defendant as the handgun brandishing robber. N.T. 7/11/6, pp. 65-69, 77-91. *See also* Commonwealth Exhibit C-4 – Preliminary Hearing Transcript, pp. 10-14, 16 and Commonwealth Exhibit C-3 – Photo Array. Moreover, there is no evidence at bar that Mr. Abraham ever identified anyone as this armed robber other than Defendant Dickerson.

This court at trial having keenly observed his testimonial demeanor found credible Mr. Abraham's explanations about his fear of cooperating with the prosecution causing him to refuse during the preliminary hearing to identify the Defendant. N.T. 7/11/16, pp. 85-87, 90-91. His testimony at trial about a fearful reluctance to appear as a Commonwealth witness was likewise consistent with and further corroborated by that which he offered before the magisterial district judge. *See* Commonwealth Exhibit C-4 – Preliminary Hearing Transcript, pp. 8, 11, 21-22, 24, 25, 26.

Unique to the matter at bar, the robbery victim, Mr. Abraham, and Defendant Dickerson were not strangers. Prior to the robbery (June 18, 2015), the Defendant had been a customer of the store on a recurrent basis. The frequency of his patronizing the station was such that the Defendant and Mr. Abraham had struck up an acquaintanceship which included many personal discussions, and Defendant Dickerson had even given to Mr. Abraham his telephone number. N.T. 7/11/16, pp. 48-50, 71-72, 76. The regularity with which the Defendant had been to the store was of a nature that Mr. Abraham came to know that he was often in the company of his mother, a woman driving a blue, Chevrolet SUV. N.T. 7/11/16, pp. 71, 76. When he again observed this woman operating the same automobile just a few days after the robbery, on Mr. Abraham forwarding to the police the Pennsylvania license plate of her motor vehicle (HVN7672), Chief Herron determined the SUV was registered at Defendant Dickerson's address. N.T. 7/11/6, pp. 48-50. N.T. 7/13/16, pp. 115-18. *See also* Commonwealth Exhibit C-7 – Chief Herron's Report.

Mr. Abraham's previous familiarity with the Defendant manifested itself at trial as the reasoned foundation on which his identification firmly rested. From the nature, frequency, and timing relative to the robbery of these prior interactions, Mr. Abraham realized in the course of the robbery Defendant Dickerson's identify even then telling him, "I know you." N.T. 7/11/16, p. 39. *See also* N.T. 7/11/16, pp. 48-50, 71-72, 76. Per that below, despite being ably and understandably confronted during cross-examination about his refusal to make an in-court preliminary hearing identification and the partial concealment of the armed robber's facial features, Mr. Abraham was yet as resolute in his identification of the Defendant being the firearm brandishing assailant as he was when he unequivocally and with certainty made the same identification during the prosecution's questioning:

Mr. Gaertner:

So based on that you thought he was someone who had been in the store before, is that correct?

Mr. Abraham:

I didn't thought [*sic*]. I knew. ...

32

Mr. Gaertner:

> So one further time, based on seeing the nose and eyes and with a gun pointed in your face, you're still – you're still sure you know who it was that day?

Mr. Abraham:

> Yes.

N.T. 7/11/16, pp. 70, 92. *See also* N.T. 7/11/16, pp. 32-34, 39-40, 65-69, 71, 77-91.

The security camera footage from the gas station was at trial played for the court. N.T. 7/11/16, pp. 53-59. Regarding the surveillance system's video footage, the attorneys stipulated to the security cameras' functionability and a proper custodial chain. N.T. 7/11/16, p. 52. *See also* Commonwealth Exhibit C-2 – Sunoco Surveillance Footage from June 18, 2015.

This camera system provided surveillance about the gas station's interior and exterior from eight (8) different vantage points. Two (2) camera positions showed the store's interior, two (2) others depicted just outside the shop's door from opposite directions, one (1) focused on the parking lot, and the remaining three (3) camera locations revealed nothing material. *See* Commonwealth Exhibit C-2 – Sunoco Surveillance Footage from June 18, 2015. *See also* N.T. 7/11/16, pp. 53-59.

Although the salient camera locations depicted the robbers entering the store, accosting Mr. Abraham, leaving the shop, and then fleeing together through the gas station's parking lot, the cameras' angles, distances, focal points, positionings, ranges of that shown, and overall picture clarity rendered this surveillance footage, individual and/or collectively, anything but dispositive as to the identification issue. At best, that depicted through the surveillance system allowed for the corroboration of Mr. Abraham's narrative about the robbery's event sequence and his description of the assailants' physical characteristics generally, but provided of either robber no depictions of any meaningful comparative, identification benefit. Standing alone, the surveillance video footage thus offered this court as the trial's finder of fact very little, if anything, establishing Defendant Dickerson was or was not in fact the armed robber. *See* Commonwealth Exhibit C-2 – Sunoco Surveillance Footage from June 18, 2015. *See also* N.T 7/11/16, pp. 53-59.

This court's acceptance of Mr. Abraham's unqualified identification that Defendant Dickerson was the firearm brandishing robber in light of these combined, salient circumstances recounted above was a reasoned exercise of its factfinding prerogative. *Commonwealth v. Stays supra* 70 A.3d at 1267. Relatedly, the court's denial of the Defendant's post-sentence weight of the evidence challenge driven by the contention Mr. Abraham's identification was so legally lacking should not be seen on the instant record to be a manifest abuse of its discretion. *Commonwealth v. Brown supra* 71 A.3d at 1013.

[36] 18 Pa.C.S. §3701(a)(1)(ii).
[37] 18 Pa.C.S. §903(3701(a)(1)(ii)).
[38] 18 Pa.C.S. §907(a).
[39] 18 Pa.C.S. §3701(a)(1)(ii).
[40] 18 Pa.C.S. §903(3701(a)(1)(ii)).
[41] 18 Pa.C.S. §907(a).

33